830 So.2d 335 (2002)
Donald M. LINDSEY, Jr.
v.
USAA PROPERTY AND CASUALTY INSURANCE COMPANY and Diana Hardy.
No. 2002-CA-0797.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 2002.
*336 David W. Bernberg, Kendra L. Macquet, New Orleans, LA, for Plaintiff/Appellee.
T. Gregory Schafer, Schafer & Schafer, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER and Judge TERRI F. LOVE).
MIRIAM G. WALTZER, Judge.
STATEMENT OF THE CASE
Donald M. Lindsey, Jr. filed suit on 20 January 1999 for damages allegedly sustained in a 29 April 1998 accident while a guest passenger in a car driven by Diana Handy, who was insured[1] by co-defendant USAA Property and Casualty Insurance Company (USAA). Mr. Lindsey alleged that Ms. Handy's negligence caused the accident.
USAA filed a timely answer, generally denying Mr. Lindsey's allegations, admitting the existence of an insurance policy, and alleging that Ms. Handy acted reasonably in a sudden emergency caused by negligent actions of the unidentified hit-and-run driver of a Pontiac Firebird. By supplemental and amending petition filed on 28 June 2001 Mr. Lindsey added a claim against USAA as Ms. Handy's uninsured/underinsured motorist carrier.
The trial court, on its own motion, found that Mr. Lindsey's cause of action did not exceed $50,000 exclusive of interest and costs and, on 18 July 2001 entered judgment striking the jury requested by USAA. On 2 August 2001 USAA filed a motion to strike Mr. Lindsey's supplemental and amending petition pursuant to LSA-C.C.P. art. 1151 and a declinatory exception of insufficiency of service of process. Mr. Lindsey's application to this Court for supervisory review of the trial court's judgment striking the jury was denied on 13 September 2001.
The trial court rendered judgment against USAA[2] with written reasons on 17 December 2001, awarding Mr. Lindsey his past medical expenses in the amount of $3,005[3], damages for past, present and future pain and suffering, disability, mental *337 anguish and injuries in the amount of $25,000, and denying his claim for lost wages. From this judgment USAA appeals. Mr. Lindsey answered the appeal re-urging his claim for lost wages.
STATEMENT OF FACTS
The trial court found that the collision in question occurred on 28 April 1998 while Ms. Handy, Mr. Lindsey's girlfriend, was operating a 1995 Ford Thunderbird in the middle eastbound lane of Interstate Highway 10 in eastern New Orleans. Mr. Lindsey was a passenger seated in the front passenger seat of Ms. Handy's car. At the time of the accident, it was raining and visibility was poor. The trial court found that while Ms. Handy was proceeding near the Crowder Boulevard exit, another vehicle
suddenly swerved over from the right lane into the center lane directly in front of Ms. Handy's vehicle. Immediately after completely entering the middle lane of eastbound Interstate 10 directly in front of Ms. Handy, this unknown vehicle engaged its brakes to avoid striking the vehicle directly in front of it. In response to this sudden and unexpected maneuver, Diana Handy hit her brakes and swerved sharply to the left striking the wall separating the east and westbound lanes of Interstate 10 causing severe injuries to plaintiff.
Nonetheless, the trial court concluded that it was "satisfied that the negligence of... Diane Handy was the sole and proximate cause of the collision, due to the fact that Ms. Handy was traveling at a high rate of speed in driving rain and failed to maintain control of her vehicle when another vehicle crossed into her lane of travel." Mr. Lindsey testified that Ms. Handy lost control of the car and hit the wide of the wall three times, at which time the air bags deployed.
Mr. Lindsey testified that Ms. Handy was late for work, had been late frequently and would be in trouble if she were to be late again. He testified that she was driving "real fast" towards the Interstate and the two back tires on her car were "not up to par." On cross-examination, Mr. Lindsey testified that Ms. Handy was traveling at 55 to 60 miles per hour, although at his deposition he was unable to specify a speed. The investigating police officer testified from his investigative report that Ms. Handy's car had been traveling at 45 miles per hour. The speed limit was 55 miles per hour. On cross-examination, Mr. Lindsey would not admit that when the hit-and-run car swerved in front of Ms. Handy's car there was less than a car's length between the two cars, although at his deposition he had testified that the hit-and-run car had cut in less than one total car length ahead of Ms. Handy's car. He also testified that the driving rain was the worst he had seen except for Hurricane Georges. He and Ms. Handy left her apartment in the Georgetown Apartments in water up to his shins.
The trial court exonerated Mr. Lindsey from any comparative fault. He testified that he had warned Ms. Handy about her rate of speed.
The trial court then reviewed the medical evidence including the testimony of Mr. Lindsey's treating physicians and all medical reports and concluded that Mr. Lindsey sustained a cervical and lumbar spinal injury as a result of the high impact collision and that he suffered damage to lumbar discs at L5-S1 and L3-L4. The court found no evidence of a pre-existing injury.
The court applied the supreme court's reasoning in Housley v. Cerise, 579 So.2d 973 (La.1991) and found that the collision must have caused Mr. Lindsey's injury because there was no evidence to the contrary to rebut the presumption that the *338 accident was the cause of Mr. Lindsey's objective injuries.
This conclusion is supported by Dr. Jacquelyn Cleggett's report showing that his past medical history was non-contributory to his present condition, and by Dr. Daniel Hubbard Johnson's radiology report showing that the bulging discs on Mr. Lindsey's MRI were more likely than not traumatically induced.
The trial court declined to award damages for lost earnings or lost earning capacity. The court relied on Dr. Cleggett's testimony that she did not limit Mr. Lindsey's ability to work until October 1998, when she told him not to lift any weight greater than thirty pounds. The trial court noted that this "paucity of evidence" of disability to work, coupled with contradictory evidence regarding his 1998 discharge from his job with the Orleans Parish School System caused the trial judge to conclude that Mr. Lindsey did not carry his burden of proving this item of damages. Mr. Lindsey denied that he was fired from the Orleans Parish school system for inappropriate professional behavior during school time. According to Mr. Lindsey, he was never fired, a hearing was to be held on the allegations, and he received a letter from his union saying the matter had been cleared. On cross-examination, Mr. Lindsey admitted that he received a letter from J.R. Coleman concerning the investigation. When shown the document indicating Mr. Lindsey was subsequently terminated by the school board, he admitted the document was correct. On re-direct examination, Mr. Lindsey testified that he was terminated because he was not certified in education. Because of his lack of certification, he was terminated at the end of each year subject to his taking corrective action.
Mr. Lindsey testified that he was employed at the time of trial as a special education teacher in Orleans Parish public school, teaching reading and coaching football, earning about $25,000 annually. At the time of the accident, he had left previous employment in the Orleans Parish school system. He began working for Foot Locker shoe stores as a management trainee for a salary of between $650 and $700 every two weeks. Before having completed the training program, he was fired from Foot Locker because he was unable to perform the physical duties, moving boxes, going up and down ladders, bending over and helping people try on shoes. He moved with Ms. Handy to Redlands, California in November 1998, where he worked for that school system. He became homesick for New Orleans and returned.
Mr. Lindsey testified that he felt pain the day after the accident. He thought nothing of it, but the sharp pain in his left neck muscle and pain in his back persisted, whereupon he called his attorney who referred him to Dr. Altman. During his time in California, Mr. Lindsey saw Dr. Hampton about nine months after his last visit to Dr. Altman. Mr. Lindsey testified that his pain worsened while he was in California and that he still experiences pain, particularly in bad weather and when he tries to lift things. The pain also disables him from performing some of his duties as a football coach, playing sports, lifting weights of more than 30-40 pounds and cutting grass at his home.
STANDARD OF REVIEW
In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Hill v. Morehouse Parish Police Jury, 95-1100 (La.1/16/96), p. 4, 666 So.2d 612, 614. Where a fact finder's finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly *339 wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
FIRST ASSIGNMENT OF ERROR: The trial court erred in determining that Diana Handy was solely at fault in causing the accident of 28 April 1998.
USSA contends that the trial court erred as a matter of law in failing to apportion fault to the driver of the hit-and-run car. Initially, we note that there is no conflict in the testimony concerning the basic fact that the hit-and-run car swerved precipitously in front of Ms. Handy under such circumstances that it created a sudden emergency and an impending collision. Clearly, Ms. Handy's action in driving at least 45 miles per hour in driving rain was negligent under the totality of the circumstances. The evidence supports the trial court's conclusion that Ms. Handy was at fault. However, the trial court failed to consider the effect of LSA-R.S. 32:79, which provides that on divided roadways such as the Interstate 10 in eastern New Orleans, a vehicle "shall not be moved from [its single lane] until the driver has first ascertained that such movement can be made with safety."
The evidence is uncontroverted that the driver of the hit-and-run vehicle violated this statutory provision and is, therefore, negligent per se. Mr. Lindsey testified at his deposition that the hit-and-run car cut in front of Ms. Handy's car with a clearance of no more than the distance between the bottom of the back window of the car to its rear bumper. Mr. Lindsey testified at trial that the hit-and-run car was traveling at a speed in excess of Ms. Handy's car, and, when it entered Ms. Handy's lane, it tapped its brakes. This negligent action, in conjunction with Ms. Handy's negligence as found by the trial court, contributed substantially to the accident. We apportion the fault, based on the record as a whole, half to Ms. Handy and half to the driver of the hit-and-run car.
SECOND ASSIGNMENT OF ERROR: The trial court erred as a matter of law in applying the presumption of medical causation of Housley v. Cerise, 579 So.2d 973 (La.1991) absent evident that plaintiff suffered a disability.
Generally, a plaintiff has the burden of proving that his injuries were caused by the accident in question. Lacy v. ABC Ins. Co., 97-1182 (La.App. 4 Cir. 4/1/98), 712 So.2d 189. However, the plaintiff's disability is presumed to have been caused by the accident if, before the accident, he was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, so long as the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973, 980 (La.1991). After this presumption has been established, the burden shifts to the defendant to prove that some other factor could have caused plaintiff's injuries. Maranto v. Goodyear Tire and Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757.
USAA contends that because the trial court, in discussing its denial of Mr. Lindsey's claim for lost wages, found that there was no evidence of "any true disability," the Housley presumption, which speaks in terms of "disabling condition" cannot be applied. We reject this narrow reading of Housley and do not restrict its application under the facts of this case. There was credible medical evidence that Mr. Lindsey suffered injury to his cervical spine, and credible testimony from Mr. Lindsey that the injury was objectively apparent to him immediately after the accident. While not sufficient to "disable" him from working in any type of endeavor *340 in which he was not required to lift more than thirty to forty pounds, the fact of Mr. Lindsey's injury is supported by credible evidence.
This assignment of error is without merit.
ANSWER TO APPEAL: The trial court erred in failing to award plaintiff damages for past, present and future lost wages and damages for loss of earning capacity.
Mr. Lindsey contends that he is entitled to damages for the difference between his earnings as a schoolteacher/coach and his "projected earnings" had he been able to continue in the Foot Locker management trainee program. The trial court rejected this claim, having found insufficient evidence of such loss in the record. We cannot say upon our review of the record as a whole that the trial court was manifestly erroneous or clearly wrong in making this determination. Mr. Lindsey's testimony concerning his career both in teaching and his very brief time as a shoe store trainee does not establish that his injuries caused his termination by Foot Locker. Mr. Lindsey provided no supportive documentation that his alleged disability to lift more than thirty to forty pounds caused his termination by Foot Locker. The trial court's decision to reject Mr. Lindsey's claim for lost wages is supported by the record and is reasonable under the circumstances.
In the final paragraph of Mr. Lindsey's argument in support of his answer to USAA's appeal, he suggests that the trial court should have awarded future medical expenses. He bases this argument on a portion of the transcript of California orthopedist Dr. Hampton Gaskins' deposition testimony.
Dr. Gaskins' testimony did not establish by a preponderance of the evidence that future medical treatment will be medically necessary. His report is highly equivocal, and we note that he did not review any MRI studies of Mr. Lindsey's neck and spine. Dr. Gaskins opines in his report of 16 September 1999 that depending on the results of a future MRI scan of Mr. Lindsey's neck and lower back, he would "probably be ready to have epidural injections to the cervical and lumbar spine." However, there is no indication in the record that Mr. Lindsey had an MRI whose results would have indicated the necessity of these injections. Dr. Gaskins again equivocated concerning the medical necessity of further treatment when he reported that there was only "the possibility that Mr. Lindsey could" [not more likely than not would] later become a candidate for surgery, again, depending on results of MRI studies. Although Mr. Lindsey continued to see Dr. Altman and Dr. Mathai upon his return to New Orleans, neither of these doctors recommended that Mr. Lindsey should receive epidural steroid injections or undergo surgery. Mr. Lindsey did not indicate any intention to return to California for further treatment or examination by Dr. Gaskins.
Absent clear evidence that it is more likely than not that Mr. Lindsey will require future medical treatment, the trial court did not abuse its discretion and was not manifestly erroneous or clearly wrong in refusing to make an award for future medical expenses.
The assignment of error contained in Mr. Lindsey's answer to USAA's appeal is without merit.
CONCLUSION AND DECREE
For the foregoing reasons, we affirm the judgment of the trial court except insofar as it holds Ms. Handy to be solely responsible for the accident by reason of her negligence in driving too fast under the circumstances of the case.
*341 Therefore, we amend the judgment and apportion fault to Ms. Handy in the amount of fifty percent and to the driver of the hit-and-run car in the amount of fifty percent. We affirm the judgment as amended.
JUDGMENT OF TRIAL COURT AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] The parties stipulated that USAA provides Ms. Handy coverage in the amount of $50,000 per person and $100,000 per accident.
[2] Ms. Handy could not be found, was not cited or served, and was dismissed from the suit prior to trial.
[3] The parties stipulated to medical bills totaling $3,005.