JOHNSON, J.
[ iThis is. a personal injury case arising out of a motor vehicle accident in which Plaintiff, Christine Caminita, appeals the jury verdict awarding $3,719.20 in her favor. For the following reasons, we affirm.

FACTS & PROCEDURAL HISTORY

On February 13, 2012, Plaintiff was a front seat passenger in a vehicle driven by Michelle Oregan that was struck from behind by a car driven by Defendant, Laura Cashio. According to trial testimony, Plaintiffs vehicle was stopped in traffic at a red light on West Napoleon Ave. in Metairie near the intersection of Clearview Parkway when Defendant ran into the back of it. Defendant testified that she too was stopped in traffic and had waited through two light cycles. Defendant stated that the traffic started to move and she let her foot off the brake and hit the vehicle in front of her.
The police were called and an accident report was generated. An ambulance responded to the scene but was not needed. Ms. Oregan took Plaintiff to- Kenner Regional Hospital upon leaving the accident scene after stopping by her house to get Plaintiffs identification. Plaintiff testified that she immediately felt pain, in her neck and back after the accident. At the hospital, Plaintiff reported neck and back pain. She indicated to the emergency room doctor that she did not need additional pain medication because she was currently.taking pain medication for a preexisting chronic back condition.
Plaintiff, who was 31 years old at the time of the accident, was actively treating for low back pain prior to the accident. She *848 was diagnosed with scoliosis when she was 12 years old. She had surgery in 1993, at the age of 13, to place a rod in her back. The rod later broke, requiring a second surgery in 2003 that resulted in a fusion of her back from the T12 through L3 level. Despite the |2surgery, Plaintiff continued to suffer with back pain. That same year, while Plaintiff was in a back brace, she was involved in an automobile accident where she was struck in an intersection after a car ran a red light and injured her neck. In 2008, Plaintiff had a slip and fall accident where she injured her knee and back. In 2009, a CT of her lumbar spine showed an L4-5 disc protrusion and L5-S1 disc bulge.
Plaintiff treated with various doctors in 2010 and 2011 for chronic back pain and radiating pain into her legs. A 2011 lumbar MRI showed disc abnormalities at L5-S1. Plaintiff underwent a discogram in May 2011, which indicated her L4-5 disc was symptomatic. At that time, her treating orthopedic surgeon, Dr. James Butler, recommended surgery to fuse the L4-5 level and to possibly re-attempt to fuse the Ll-2 level, but Plaintiff never had the surgery. At the time of the accident, Plaintiff was treating with a pain management specialist and was taking a significant amount of pain medication.
On March 21, 2012, one month after the February 13, 2012 accident at issue in this case, Plaintiff was involved in another motor vehicle accident in which she was again rear-ended. She subsequently treated with Dr. Rand Voorhies, a neurosurgeon, after being referred to him by her attorney for a second medical opinion. Dr. Voorhies ordered several tests, including an MRI and a SPECT scan, which is a type of bone scan that detects areas of increased metabolic activity. Dr. Voorhies interpreted the lumbar SPECT scan as abnormal, showing increased activity at L5-S1 and her sacroiliac joints (“SI joints”), mostly on the left side. He ultimately concluded that Plaintiffs main problem was her SI joints, predominantly the one on the left side. On January 29, 2013, Plaintiff underwent surgery to her left SI joint. According to Dr, Voorhies, Plaintiffs SI joint pain was caused by the February 13, 2012 accident, even though he did not examine Plaintiff until after both the February and March 2012 accidents. He explained that Rhis opinion regarding causation was based solely on Plaintiffs history and the fact she related that her SI joint pain started after the February accident. Dr. Voorhies further indicated that Plaintiff would likely require future surgery on her right SI joint.
Plaintiff filed the instant lawsuit on March 14, 2012, one month after the February accident but before the March accident against Defendant; USAA Casualty Insurance Co., as Defendant’s automobile liability insurer; State Farm Insurance Company, as the uninsured/underinsured motorist (“UM/UIM”) carrier for Ms. Ore-gan; and General Insurance Company of America,[1] as Plaintiffs own UM/UIM carrier, seeking damages for injuries she al~ legedly sustained in the accident.[2] After a three-day trial, a jury found that Plaintiff was injured in the February 13, 2012 acci *849 dent and awarded her $2,000 for pain and suffering and $1,719.20 for past medical expenses. The trial court signed a judgment to that effect on September 18, 2014. An amended judgment was signed on March 16, 2016, adding the necessary de-cretal language identifying the defendants against whom the judgment was rendered.[3] It is from the amended judgment that Plaintiff now appeals.

ISSUES

Plaintiff essentially raises two issues on appeal. First, she contends that the trial court erred in refusing to instruct the jury on the presumption of causation set forth in Housley v. Cerise, 579 So.2d 973 (La. 1991). Second, Plaintiff argues that the jury verdict is ambiguous and, therefore, an additur or new trial is required. 14Plaintiff maintains the verdict is susceptible of conflicting interpretation because it is unclear whether the jury apportioned fault between the two accidents.

LAW & ANALYSIS

Jury Charge — Housley Presumption of Causation
Plaintiff argues that the trial court erred in refusing to instruct the jury on the Housley presumption of causation. She asserts the trial court erred in concluding that she was not in good health, thereby rendering the Housley presumption inapplicable, without first submitting the factual question to the jury. Plaintiff contends the trial court impermissibly made its own credibility determinations and weighed the evidence regarding her health status instead of allowing the jury to do so. Plaintiff further maintains that despite the evidence of her preexisting chronic back pain, the trial court erred in finding she was not in good health for purposes of the Housley presumption because there was no evidence she suffered from any SI joint pain or dysfunction prior to the accident.
Louisiana Code of Civil Procedure Article 1792(B) requires that a trial judge instruct the jury on the law applicable to the case submitted to them. “The trial judge is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law it deems inappropriate.” Wooley v. Lucksinger, 09-571 (La. 4/1/11); 61 So.3d 507, 573, quoting Adams v. Rhodia, Inc., 07-2110 (La. 5/21/08); 983 So.2d 798, 804 . Trial courts are given broad discretion in formulating jury instructions and a trial court’s judgment should not be reversed so long as the charge correctly states the substance of the law. Adams, supra.
The trial judge is under no obligation to give any specific jury instruction that may be submitted by either party; however, the judge must correctly charge the jury. Wiltz v. Bros. Petroleum, LLC, 13-332 (La.App. 5 Cir. 4/23/14); 140 So.3d 758, 777, rehearing granted in part on other grounds, 13-332 (La. App. 5 Cir. 5/21/14); 140 So.3d 758, writs denied, 14-1252 and 14-1298 (La. 10/10/14); 151 So.3d 581 and 151 So.3d 583. The question considered on review is whether the trial judge adequately instructed the jury; specifically, whether the jury instructions misled the jury to the extent that it was *850 prevented from dispensing justice. See Adams v. Rhodia, Inc., supra.
Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. Wiltz, supra. When deficiencies in the jury instructions are raised on appeal, the appellate court must consider the instruction as a whole to determine if the jury charges adequately provided the correct principles of law as applied to the issues framed in the pleadings and the evidence and whether the charges adequately guided the jury in its deliberations. If the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error. Id.
A de novo review- of the record is only warranted when the jury charges are so incorrect or inadequate that the jury was barred from reaching a verdict based on .the law and the facts. Otherwise, the manifest error standard of review applies to determine if the trial court erred in omitting the requested instruction. Loconte Partners, LLC v. Montgomery & Associates, 12-691 (La. App. 4 Cir. 5/15/13); 116 So.3d 904, 911.
 In a personal injury suit, the plaintiff bears the burden of proving, by a preponderance of the evidence, a causal relationship between the injury sustained and the accident which caused the injury. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La. 2/20/95); 650 So.2d 757, 759. In determining the causal relationship between the accident and subsequent injury, the test is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Id.
| ¡jin Housley v. Cerise, 579 So.2d 973, 980 (La. 1991), the Louisiana Supreme Court set forth a presumption of causation that aids a plaintiff in a personal injury case: the presumption is' that the plaintiffs injury -resulted from the accident. However, in order for a plaintiff to be entitled to the presumption of causation, he must prove three things: (1) that he was in good health prior to the accident at issue; (2) that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves afterward; and (3) a reasonable possibility of causation between the accident and the claimed injury. Housley, supra; Gober v. Walgreen La. Co., 46,730 (La.App. 2 Cir. 11/2/11); 80 So.3d 9, 13, writ denied, 11-2837 (La. 3/2/12); 84 So.3d 531.
This presumption, known as the Housley presumption, is rebuttable. A defendant may defeat it by showing that an alleged injury could have been caused by some other particular incident rather than by the accident that the plaintiff claims was the cause of the injury. Maranto, 650 So.2d at 761.
In this case, Plaintiff requested three jury instructions relating to the Housley presumption:
PLAINTIFF’S PROPOSED JURY CHARGE NO. 6
The Housley presumption
There is a legal presumption" in personal injury actions that a medical condition producing a disability, resulted from the accident, if:
(1) the injured person was in good health prior to the accident;
(2) the disabling condition manifested itself shortly after the accident, and
(3) medical evidence indicates that there is a reasonable possibility of a causal connection -between the *851 accident and the disabling condition.
PLAINTIFF’S PROPOSED JURY CHARGE NO. 7
Pre-existing degenerative disc disease does not prevent a person from establishing that before the accident she was in “good health” for |7the purpose of applying the Housley. presumption, if the degenerative disease was not causing problems before the accident, and became symptomatic after the accident.
PLAINTIFF’S PROPOSED JURY CHARGE NO. 8
A claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
This presumption is applicable to personal injury cases in which the medical evidence shows 'there is a reasonable possibility of a causal connection between the accident and the medial condition
The trial judge declined to give any jury instruction pertaining to the Housley presumption and rejected all three proposed instructions.[4] Plaintiff argues on appeal that the trial court erred in refusing to give the requested instructions.
Whether to give a particular jury instruction is within the - discretion of the trial court and its decision will not be disturbed absent an abuse of that discretion. Loconte, 116 So.3d at 910. Several cases have addressed the same issue of whether the trial court erred in failing to give a jury charge on the Housley presumption.
In Venissat v. St Paul Fire & Marine Ins. Co., 06-987 (La.App. 3 Cir. 8/15/07); 968 So.2d 1063, rehearing granted on other grounds, 06-987 (La. App. 3 Cir. 11/7/07), — So.2d —, 2007 La. App. LEXIS 2076, the Louisiana Third Circuit found the trial court was not manifestly erroneous in rejecting the Housley Instruction. The court explained that “[t]he facts that were presented could reasonably lead one to conclude that [the plaintiff] was not in good health before | sthe accident, a finding that is sufficient to preclude the application of the presumption in this case, and to preclude the inclusion of the charge in the jury instructions.” Id. at 1071. The court noted that the evidence showed the plaintiff suffered pre-existing degenerative changes in his cervical spine that were symptomatic time-to-time prior the accident and for which he. sought treatment several tibies in the year's preceding the accident. The plaintiffs complaints after the sued upon accident were similar to some of his pre-accident complaints of pain.
*852 Also, in Jaramillo v. Lopes, 04-2042 (La. App. 4 Cir. 1/18/06); 925 So.2d 559, writ denied, 06-396 (La. 4/28/06); 927 So.2d 292, the Louisiana Fourth Circuit found the trial court did not err in refusing to give a jury instruction on the Housley presumption because the plaintiff failed to prove that he was in good health prior to the accident. The plaintiff testified at trial that he had problems with his neck two years prior to the accident at issue. The pain resolved itself for a period of time but returned seven months later. At the time of the accident, the plaintiff had been pain free for a year; but, after the accident, his pain recurred. The plaintiff argued that although he had been diagnosed with radi-culopathy prior to the accident, it was only after the accident that he was diagnosed with myelopathy. Nonetheless, the record showed that his pre-accident MRI was essentially the same as his post-accident MRI. The Fourth Circuit found that the Housley presumption was inapplicable under the facts of the case.
We likewise find, under the facts of this case, that the trial court was not manifestly erroneous in refusing to give a jury charge on the Housley presumption. Plaintiff had a long history of significant back pain prior to the February accident. In August 2010, she was seen in the emergency room for chronic low back/buttock pain and was having difficulty walking. In the fall of 2010, Plaintiff was getting between 270 and 380 pain pills a month, which she testified she took for her pain. She treated with Dr. Ellenberger in April 2011 for back pain that prevented her 19from caring for her son, performing household chores, and exercising. At that time, she was unable to walk more than one mile or sit or stand for more than 30 minutes without pain medication.
In May 2011, Plaintiff treated with Dr. James Butler, an orthopedic surgeon, for complaints of chronic back and leg pain that she had suffered from for years. At the time she saw Dr. Butler, she had radiating pain in both legs. In June 2011, Dr. Butler opined that Plaintiff needed a fusion of her L4-5 and possible revision fusion of her Ll-2 level; however, at the time of the February 2012 accident, she had not had the recommended surgery. Dr. Butler further testified that Plaintiff had facet arthrosis at L5-S1, which generates pain in and of itself. He explained that any fusion puts stress on the spine adjacent to the fusion. He also explained that the SI joints are close to the L5-S1 level. Dr. Butler stated that he did not run any tests on Plaintiffs SI joints because he did not think she had any symptoms from that area. Dr. Butler did not treat Plaintiff after June 2011.
Two weeks before the February accident, Plaintiff began treating with Dr. Anil Prasad. She complained to Dr. Prasad that she had increased pain with sitting, standing for long periods, bending, lifting, stooping, crawling and performing household chores, and was having difficulty sleeping because of the pain. Dr. Prasad’s medical records indicate that Plaintiff rated her pain without medication as ten out of ten on a pain scale.
Plaintiff testified that after the February accident, she had an immediate head.ache and her neck and back were sore. She stated, that her pain was localized in the center of her back before the accident, whereas after the accident her pain was off to the side, which was new to her, and she had increased radiating leg pain. However, Plaintiff admitted that she only told the emergency room personnel immediately after the accident that she had minor neck and back pain and never reported left-sided back pain. Additionally, in her regularly scheduled follow-up |1flvisit with Dr. Prasad two weeks after the February acci *853 dent, she indicated that she had been in an automobile accident but did not mention any new areas of pain. In fact, Plaintiff reported to Dr. Prasad that her current pain medication was helping with her pain from the February accident. Other than the emergency room visit and one visit to Dr. Prasad, Plaintiff did not seek any other treatment between the February and March accidents.
Plaintiff next saw Dr. Prasad on March 27, 2012, one week after the March accident. His medical records indicate that Plaintiff reported an increase of pain from a three to a six on a pain scale since her last visit one month earlier, which was after the February accident. Although Plaintiff testified at trial that she only experienced a slight increase of back pain that was more like soreness after the March accident, she previously testified in her deposition that her back pain increased more after the March accident than the February accident.
Upon referral of her attorney, Plaintiff was next seen by Dr. Voorhies on March 28, 2012, which was one week after the second accident. In the paperwork Plaintiff filled out for Dr. Voorhies, she indicated that she was being seen for back and neck pain from two accidents, February 13,2012 and March 21, 2102. She testified that she told Dr. Voorhies that she had increased and more radiating pain since the two accidents, but specifically stated she did not distinguish the pain between the accidents.
Dr. Voorhies testified that Plaintiff had an aggravation to her low back condition as a result of the accidents, and specifically testified that Plaintiffs SI joint problems originated from the February accident. While he acknowledged that he had examined Plaintiff only after both accidents, he explained that his opinion | nthat the February accident caused Plaintiffs-SI joint problems was based solely on the fact Plaintiff told him her symptoms developed after the first accident.[5]
Dr. Andrew Todd, Defendant’s expert orthopedic surgeon who examined Plaintiff, testified that Plaintiff had problems at L4-5 and her facet joints, which are on either side of the disc, prior to the February accident. He explained that the bottom of the lumbar spine connects closely to the SI joints. He affirmed Dr. Butler’s testimony that a fusion tends to cause adjacent level problems, either degenerative disc disease or arthritis, or specifically in Plaintiffs case, problems with L4-5 and L5-S1 and her facet joints at those levels. Dr. Todd explained that SI joint injury causes significant pain with weight bearing and makes walking difficult. In reviewing Plaintiffs medical records, Dr. Todd was unable to find any evidence that Plaintiff complained of any pain other than her chronic low back pain between the time, of the February and March 2012 accidents. Specifically, he could find no symptomatol-ogy during this time period that was different than what she experienced before the February accident.
Based on the evidence presented at trial, we find the trial court was not manifestly erroneous in rejecting the Housley instruction. The facts that were presented could reasonably lead one to conclude that Plaintiff was not in good health before the accident, which precludes the application of the Housley presumption and precludes *854 the'inclusion of the charge in the jury instructions. Additionally, the record supports a conclusion that Plaintiff failed to carry her burden of proving a reasonable possibility that the accident caused her SI joint problems.
The medical evidence was contrary to Plaintiffs self-serving trial testimony'that she experienced different and new pain after the.. February . 2012 accident, 1 ^Plaintiff had a long history of radiating pain and trouble walking due to her back pain prior to the February accident. She was symptomatic and actively treating for her pain-at the time-of the accident. Nothing in the medical evidence shows the February accident caused anything more than a slight aggravation of her preexisting symptomatic back condition, for which the jury awarded her damages, before a second March accident, which caused her symptoms to again increase.
Plaintiff argues that these conclusions are factual determinations that require assessing the credibility of witnesses and weighing the evidence, which fall within the domain of the jury and not the trial court. As we noted earlier, the trial judge is responsible for reducing the possibility of confusing the jury in charging the jury. See Wooley, 61 So.3d at 573. In performing this duty, the trial judge necessarily has to assess the evidence, or make factual determinations, to determine what law is applicable to the facts. We find that the record reasonably supports the trial court’s refusal to charge the jury with the Housley presumption of causation.
Ambiguity of Jury Verdict
Plaintiff next challenges the jury verdict as ambiguous. She argues the verdict is susceptible of conflicting interpretation because the jury interrogatories simply asked whether the accident caused Plaintiffs injuries without any allocation of fault between the February and March accidents. Plaintiff contends that the jury’s response of “yes” to the question of whether the accident caused Plaintiffs injuries could mean either the February accident was singularly responsible for her injuries, which' would mean the jury award was inadequate, or that the February accident was simply a contributing factor to her injuries.
We find this issue is precluded frond' appellate review. Under La. C.C.P. art. 1793, “[a] party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which 11Rhe objects and the grounds of his objection.” In order to preserve the right to appeal a trial court’s failure to give a requested instruction or its giving of an erroneous instruction, a party must not only make a timely objection, but must state the grounds of the objection. This rule also applies to jury interrogatories. Willis v. Ochsner Clinic Foundation, 13-627 (La.App. 5 Cir. 4/23/14); 140 So.3d 338, 348-49.
Prior to trial, both parties submitted proposed jury interrogatories. Notably, Plaintiffs proposed interrogatories did not include any interrogatory regarding allocation of fault between the two accidents. Defendants objected to a portion of Plaintiffs proposed interrogatories and the trial court ruled on Defendants’ objection prior to trial. However, the record does not reflect that Plaintiff lodged any objection to Defendants’ proposed jury interrogatories or the jury interrogatories ultimately given to the jury by the trial court.
While Plaintiff objected to the trial court’s failure to instruct the jury on the Housley presumption, she failed to make any objection to the jury interrogatories. *855 As such, she is prohibited from coming to this Court after the jury verdict has been rendered and arguing that the jury interrogatories were ambiguous. Because Plaintiff failed to contemporaneously object to the jury interrogatories at trial, we find she is precluded from challenging the interrogatories on appeal. See Willis, supra at 349.

DECREE

Based on the foregoing, we find the trial court did not abuse its discretion in refusing to give a jury charge on the Housley presumption. Accordingly, we affirm the trial court’s March 16, 2016 judgment, which made the jury verdict the judgment of the court.
AFFIRMED

. General Ins. Co. answered the lawsuit indicating that Plaintiff had improperly identified it as Safeco Ins. Co. in the petition. The judgment at issue is rendered against General Ins. Co. as Plaintiffs UM/UIM carrier. Thus, despite the fact an appellee brief was filed on behalf of Safeco Ins. Co. rather than General Ins. Co., we will refer to Plaintiff’s UM/UIM carrier as General Ins. Co., as Safeco Ins. Co, never answered the lawsuit.

. Ms. Oregan was also a plaintiff in this lawsuit. However, Ms. Oregan settled her claims against Defendant and USAA Casualty Ins, Co. prior to trial.

. Plaintiff initially appealed the September 18, 2014 judgment. However, this court dismissed Plaintiff’s appeal after determining that the judgment did not contain the required decretal language in order to render the judgment final because it failed to identify the defendants against whom the judgment was rendered. This Court remanded the matter to the trial court so that a proper final judgment could be rendered. See Oregan v. Cashio, 15-612 (La.App. 5 Cir. 1/27/16); 185 So.3d 885.

. At the conclusion of the evidence, Plaintiff requested a jury charge on the Housley presumption. The trial judge noted that he had concern With the third prong of Housley, which requires that be a reasonable possibility of a causal connection between the accident and the disabling condition before the presumption applies. He pointed to Dr, Pra-sad’s testimony, as Plaintiff's treating physician, that Plaintiff's pain increased dramatically after the second accident as opposed to the first and that Plaintiff never complained about SI joint pain or- radiating lower pain until after the second accident. The trial court took the matter under advisement, indicating he would rule the next day. The following day, Plaintiff lodged an - objection to the trial court’s decision not to include jury charges relating to the Housley presumption, The actual ruling denying the Housley charge occurred off the record:

. In Dr. Voorhies’ initial report, he noted Plaintiff experienced an increase of neck and back pain as a result of both the February and March accidents and made no mention of any SI joint symptoms. It was only after Plaintiff's counsel requested clarification that Dr. Voor-hies issued a supplemental report that stated Plaintiff’s SI joint pain was caused by the February accident.