CINDY AYCH

VERSUS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ALFORTISH
ENTERPRISES, L.L.C. AND MADISON
RANDON

NO. 23-CA-89

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 774-008, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

October 31, 2023

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Stephen J. Windhorst

<u>**AFFIRMED**</u>
　　**SMC**
　　**FHW**
　　**SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
CINDY AYCH
 Dominick F. Impastato, III
 Marc L. Frischhertz

COUNSEL FOR DEFENDANT/APPELLANT,
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
ALFORTISH ENTERPRISES, L.L.C. AND MADISON RANDON
 Matthew A. Mang
 Victoria H. Fabre

**CHEHARDY, C.J.**

Defendants-appellants, State Farm Mutual Automobile Insurance Company, Alfortish Enterprises, L.L.C., and Ms. Madison Randon, appeal the trial court's judgment, entered on the jury's verdict, awarding plaintiff-appellee Cindy Aych $187,000 in damages for alleged injuries resulting from an automobile accident. For the reasons that follow, we affirm the judgment.

*Facts and Procedural History*

On July 17, 2016, Ms. Randon, while working for Alfortish Enterprises, rear-ended Cindy Aych's vehicle on David Drive in Jefferson Parish. Dr. Timothy Kern, a chiropractor, began treating Ms. Aych for back and neck pain three days after her July 2016 accident. After approximately six months of conservative treatment, Dr. Kern referred Ms. Aych to a neurosurgeon because her symptoms had not subsided.

Ms. Aych filed suit against Ms. Randon; her employer, Alfortish Enterprises; and its insurer, State Farm. The defendants stipulated to fault, so the only issue presented to the jury was the nature and extent of Ms. Aych's damages as a result of the accident. After a three-day trial, the jury awarded Ms. Aych $37,000 in past medical expenses, $75,000 for past pain and suffering, and $75,000 for future pain and suffering. The jury did not award any damages for future medical expenses, past or future loss of earnings, or past or future mental anguish and distress.

Dr. Kern, Ms. Aych's chiropractor, testified at trial that plaintiff complained of pain in her neck, mid-back, and upper back, as well as trapezius muscle pain. At the time of her initial visit, Dr. Kern stated that she had a limited range of motion. Dr. Kern provided various treatments and referred Ms. Aych out for an MRI of her neck. The 2016 MRI showed various levels of disc herniation, as well as an annular fissure, or a little bit of cracking, in the disc, all of which were causing her

pain. Dr. Kern noted that Ms. Aych had spasms in the cervical spine from cervical levels 4 through 7, bilaterally, and that the trapezius muscle, which runs from the base of the skull into the mid back and out to the shoulders, was hypersensitive and spasmatic. The erector spinae muscles, which run on both sides of the spinal column, thoracic level 1 through 6, were also spasmatic. Dr. Kern testified that those injuries were more likely than not related to her July 17, 2016 accident. Dr. Kern did not diagnose Ms. Aych with any kind of disability or physical impairment. On March 31, 2017, after several months of chiropractic treatment, Dr. Kern referred Ms. Aych to a neurologist, Dr. Bartholomew, and Dr. Kern did not see her again until November 16, 2017.

Dr. Barczyk, another chiropractor who is also a biomechanist and an accident reconstructionist, testified at trial as an expert on plaintiff's behalf. Dr. Barczyk concluded that plaintiff's injuries and symptoms were consistent with the July 2016 accident. He estimated that the "speed change" or "Delta V" to plaintiff's vehicle as a result of the impact from the rear-end collision was likely under six miles per hour. Dr. Barczyk testified that it was likely that plaintiff interacted with the head restraint and the seat and then bounced forward. He noted that plaintiff had limited range of motion and muscle spasms shortly after the accident. There were also no MRIs taken following previous accidents with which to compare her post-accident MRI taken in 2016. As far as Dr. Barczyk knew, there was nothing remarkable in her history for two or three years before her 2016 accident, however, he testified that the MRI showed certain degenerative disc issues, or normal age-related processes often found in people over the age of forty.

Ms. Aych testified that she began experiencing pain on the evening of the accident. She stated that her neck hurt, and she started experiencing pain shooting from her neck down her right arm. She saw Dr. Kern for treatment three days after the accident, and although the pain never went away, it became more bearable. In

February of 2017 she began treatment with Dr. Bartholomew, whom she told about her pain running all the way down to her fingers, causing tingling. He prescribed various medications and then performed facet blocks in May 2017, putting her under general anesthesia. Ms. Aych testified that the facet blocks helped for about a week or two, but then the pain returned. Dr. Defrancesch subsequently performed medial branch blocks in August 2017, which helped only temporarily. On October 25, 2017, Dr. Bartholomew performed radio frequency rhizotomy, which helped for approximately two weeks, after which the pain returned. At that point, Dr. Bartholomew ordered an MRI, which was performed on January 8, 2018. Dr. Bartholomew recommended neck surgery, which would require her to remain at home without working for 8 to 12 weeks.

Ms. Aych testified that the pain made it difficult for her to fall asleep and difficult to maintain her everyday life. She cannot sit for long periods of time, so travel with her family has become more expensive because often she has to fly. If she does travel in the car, she has to stop frequently or sometimes lie down in the car. She has throbbing pain in her neck, and she cannot do the same things that she used to do with her grandkids, such as keeping all of them at the same time. Now she can only walk for short periods of time before needing to rest. As her youngest grandchild grows, it is more difficult to hold him. Although she maintains her job as a Jefferson Parish bus driver, she takes Aleve almost every day to manage the pain.

Ms. Aych also testified that she had gastric sleeve surgery in 2016, and before the July 2016 accident, she lost approximately 60 pounds because she was walking three miles a day and lifting weights, activities that she stopped doing after the accident. She still has not fully recovered from her injuries caused by the 2016 accident.

Ms. Aych further testified as to her previous auto accidents. In 1995, she was involved in an accident that required chiropractic treatment similar to the treatment she received from Dr. Kern. In 2001, she was a backseat passenger in someone's vehicle that was rear-ended on St. Claude Avenue. After the 2001 accident, she sought treatment from Dr. Ott for neck and back pain. In 2008 she was involved in another rear-ended accident on Downman and Chef Menteur in New Orleans. Ms. Aych explained that after undergoing approximately six months of therapy after the 2008 accident, she had no complaints. Ms. Aych did not dispute, however, that medical records related to her treatment for uterine fibroids in 2013 show that she also complained of neck pain and cervical strain. She agreed that she did not tell Dr. Kern about this when she was giving him her history, because everything was hurting around that time in 2013 when she was having a hysterectomy.

Finally, Ms. Aych explained that she researched the surgery that Dr. Bartholomew recommended and was terrified of it. Approximately two years later, in February 2020, Ms. Aych saw Dr. Bartholomew again because she was still in pain and wanted to get more information about the surgery. She testified that although she wanted to have the surgery, she felt that she could not afford to have it because she could not stay home for 8 to 12 weeks without working. She told Dr. Bartholomew that she was not ready for the surgery and that she was scared of it.

Dr. Bartholomew, plaintiff's treating neurosurgeon, agreed that Ms. Aych had "multiple findings of degenerative conditions or pre-existing degenerative disc disease in her spine" based on her 2016 MRI, and agreed it was possible that accidents in 1995, 2001, and 2008 could cause accelerated degenerative disease. Dr. Bartholomew also agreed that the more levels of disc herniations or degenerative disease a patient suffers from, the more likely it is that the disc pathology is not the result of one-time minimal trauma, but is likely pre-existing

and degenerative. Dr. Bartholomew stated: "At least part of [plaintiff's injuries] pre-dated the trauma" from the present accident. He also indicated that a one-time MRI is not sufficient to determine which herniation or which osteophytes, or bone spurs, may have developed as a result of which accident.

The defendants offered testimony from Dr. Richard Baratta, an expert in biomedical or biomechanical engineering and accident reconstruction. He holds a Ph.D. in biomedical engineering; he is not a physician or a chiropractor. As such, the trial court did not permit Dr. Baratta to testify as to medical causation. Dr. Baratta stated that he thought it was more likely than not that a person would *not* be injured in the type of low-speed crash/accident that Ms. Aych experienced in 2016.

Dr. David Aiken testified for the defendants as an expert in orthopedics and orthopedic surgery. Dr. Aiken performed a one-time evaluation of Ms. Aych on July 10, 2018. Subjectively, Ms. Aych complained of neck pain, but his objective exam indicated that she was totally normal, with no signs of muscle spasms or a pinched nerve. Dr. Aiken also reviewed Ms. Aych's 2016 and 2018 MRIs, finding three ruptured discs in the cervical area, but he could not say when those ruptures would have occurred. Dr. Aiken testified that 90% of ruptured discs get better with time. He believes that the longer Ms. Aych goes without having the surgery, the less likely it is that she will have the surgery or even need it. Even if she has the surgery, he testified that it would not necessarily mean that her injuries are related to the 2016 accident. If she were his patient, Dr. Aiken would recommend against her having the surgery. On cross-examination, Dr. Aiken agreed that he could not be certain that the trauma from the 2016 accident was insufficient to rupture the discs in her neck, and he cannot say which injuries pre-dated the accident and which injuries did not pre-date the accident. He agreed that if there was sufficient

force, one or more of the disc herniations could have been caused by the 2016 accident.

Ms. Randon, the tortfeasor, allegedly lives in Florida and did not testify at trial to confirm or explain the magnitude of the accident. The jury awarded Ms. Aych $37,000 in past medical expenses but no future medical expenses, and awarded $75,000 for past pain and suffering and $75,000 for future pain and suffering. The trial court entered judgment on the jury's verdict.

Plaintiff and defendants both filed motions for JNOV and/or new trial. In defendants' request for judgment notwithstanding the verdict (JNOV) and/or motion for new trial, or, alternatively, remittitur, they asked the trial court to strike the $75,000 future pain and suffering award. The trial court denied defendants' and plaintiff's post-trial motions. Defendants now appeal the judgment.

*Law and Analysis*

Defendants raise three assignments of error. First, they argue that the trial court erred in denying their motion for JNOV seeking to strike the jury's $75,000 award for future pain and suffering. Defendants contend that the award is so inconsistent with the remainder of the jury's verdict that it constitutes an abuse of discretion, considering that the jury contradictorily determined that Ms. Aych did not prove a need for future medical expenses. Second, defendants argue that the trial court erred in denying their JNOV because the $75,000 award for future pain and suffering was not based on competent evidence and was given in contravention of the trial court's instruction to disregard counsel's statements in closing arguments that suggested the amounts to be awarded. Third, defendants contend the trial court erred in instructing the jury regarding the *Housley* presumption, where plaintiff did not allege or prove any "disability" or "disabling condition," and where plaintiff had a pre-existing, degenerative cervical spine condition and thus was not in good health before the present accident occurred.

*Assignments of Error #1 and #2: Failure to Grant JNOV*

Defendants contend that the trial court should have granted a JNOV because the jury's verdict was inconsistent in awarding damages for future pain and suffering without awarding future medicals, and due to the lack of competent evidence to support the future damages award.

A JNOV is a procedural device by which the trial court may modify the jury's findings of fault or damages to correct a legally erroneous verdict. La. C.C.P. art. 1811. A JNOV is warranted when the facts and reasonable inferences point so strongly and overwhelmingly in favor of the moving party that the court believes that reasonable jurors could not arrive at a contrary verdict, not merely where there is a preponderance of evidence for the mover. *Davis v. Wal-Mart Stores, Inc.*, 00-445 (La. 11/28/00), 774 So.2d 84, 89. If there is evidence opposed to the motion that has such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment could reach different conclusions, the motion should be denied. *Id.* All reasonable inferences or factual questions should be resolved in favor of the non-moving party. *Id.* When a motion for judgment notwithstanding the verdict is denied, the appellate court simply reviews the record to determine whether there is legal error or whether the trier of fact committed manifest error. *Barnett v. Woodburn*, 20-0675 (La. 1 Cir. 4/16/21), 324 So.3d 641, 650.

A jury is given great discretion in its assessment of quantum for both general and special damages. La. C.C. art. 2324.1; *Guillory v. Lee*, 08-0075 (La. 6/26/09), 16 So.3d 1104, 1116. The jury's assessment of quantum or determination of the appropriate amount of damages is a determination of fact that is entitled to great deference on appeal. *Wainwright v. Fontenot*, 00-0492 (La. 10/17/00), 774 So.2d 70, 74. On review, an appellate court must be careful not to reweigh evidence or

substitute its own factual findings just because it would have decided the case differently. *Guillory*, 16 So.3d at 1117.

Arguing that the award for future general damages is so inconsistent that JNOV is warranted, defendants point to *Simon v. Automobile Club Inter-Insurance Exchange*, 20-156 (La. App. 5 Cir. 10/13/21), 329 So.3d 1072. In *Simon*, this Court acknowledged that an award of special damages, such as future medical expenses, without an award of general damages, such as future pain and suffering, "may 'often' be so inconsistent as to constitute an abuse of discretion." While we recognize that the jurisprudence supports an award of general damages for future pain and suffering when future medical expenses have been awarded, we decline to adopt the converse rule that defendants propose—that an award for future general damages should be stricken when there is no award for future medical expenses— and we find *Simon* inapposite.

A heightened burden of proof exists for future medical expenses:

> Future medical expenses, as special damages, must be established with some degree of certainty, and a plaintiff must demonstrate that such expenditures will, more probably than not, be incurred as a result of the injury. The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expenses will be medically necessary. "Awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost."

*Jackson v. Underwriters at Lloyd's of London*, 21-15 (La. App. 5 Cir. 9/29/21), 329 So.3d 1029, 1040, *writ denied*, 21-1591 (La. 1/12/22), 330 So.3d 617 (internal citations omitted). On the other hand, medical evidence is not required for an award of general damages. *Beausejour v. Percy*, 08-379 (La. App. 5 Cir. 10/14/08), 996 So.2d 625, 628-29.

Here, the record contains ample support for the jury's apparent determination that, more likely than not, Ms. Aych will not undergo the surgery

that Dr. Bartholomew recommends. Yet there is also evidentiary support, in the form of Ms. Aych's own testimony, for the jury's apparent determination that she will continue to experience pain and suffering in the future that is caused by, at least in part, the 2016 accident. The facts and reasonable inferences do not point so strongly and overwhelmingly in favor of defendants that reasonable jurors could not have arrived at the verdict they reached in this case. As such, we find no inconsistency in, nor do we find a lack of evidentiary support for, the jury's verdict, and the trial court did not abuse its discretion in refusing to grant defendants' request for JNOV. Defendants' first and second assignments of error lack merit.

*Assignment of Error # 3: The* <u>Housley</u> *jury charge*

In their third assignment of error, defendants argue that the trial court erred when it overruled their timely objection seeking to exclude the *Housley* presumption in the jury instructions. A *Housley* charge states that a fact finder may presume causation in personal injury cases only when the plaintiff can prove that (1) he was in good health before the accident at issue; (2) after the accident, symptoms of the alleged injury appeared and continuously manifested themselves; and (3) there is a reasonable possibility of causation between the accident and the claimed injury. *Oregan v. Cashio*, 16-563 (La. App. 5 Cir. 4/26/17), 220 So.3d 845, 850. The presumption emanates from *Housley v. Cerise*, 579 So.2d 973 (La. 1991), in which the Louisiana Supreme Court, quoting *Lukas v. Ins. Co. of N. America*, 342 So.2d 591 (La. 1977), a worker's compensation case, stated:

> [A] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.

*Housley*, 579 So.2d at 980. The *Housley* charge that the trial court read to the jury at the conclusion of the present trial stated:

> When a person has enjoyed good health prior to an accident and after an accident suffers from a medical condition, the plaintiff is entitled to a legal presumption that the accident caused the medical condition where medical testimony shows a reasonable possibility that the accident caused the injury.
>
> When symptoms of an injury appear shortly after a traumatic accident, are consistent with that accident, and continuously worsen, a defendant who contests the cause-in-fact relationship must show some other particular incident caused the injury.

To rebut the *Housley* presumption, a defendant must show that some other particular incident could have caused the injury in question. *Oregan*, 220 So.3d at 850 (citing *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 (La. 2/20/95), 650 So.2d 757, 759). The *Housley* presumption does not apply where there is a reasonable factual basis in the record for the fact finder to determine that the plaintiff did not sustain injuries in the accident at issue. *Romero-Zambrano v. Bell*, 14-404 (La. App. 5 Cir. 11/25/14), 165 So.3d 143, 146. The test for determining the causal connection between the accident and the subsequent injury is whether the plaintiff proved, through medical testimony, that it is more probable than not that the subsequent injuries were caused by the accident. *Maranto*, 650 So.2d at 759.

Defendants argue first that the *Housley* charge applies only to a plaintiff with a claim for a "disability" or a "disabling condition," and that Ms. Aych does not suffer from a disability or a disabling condition. We reject this argument. The *Housley* case itself concerned a pregnant plaintiff whose water broke prematurely, thereby suffering an injury, not a disability. Additionally, numerous cases since *Housley* have applied the presumption when the plaintiff was injured but not "disabled." *See*, *e.g.*, *Maranto*, 650 So.2d at 761 (finding that the plaintiff, who

suffered herniated disc injuries after an auto accident, was entitled to the *Housley* presumption, and that defendant, to defeat the presumption, must show some other particular incident could have caused the injury in question); *Clement v. Carbon*, 13-827 (La. App. 5 Cir. 4/8/14), 153 So.3d 460, 464 (same); *Lindsey v. USAA Prop. & Cas. Ins. Co.*, 02-797 (La. App. 4 Cir. 10/9/02), 830 So.2d 335, 339-40 (rejecting defendant's suggestion that application of the *Housley* presumption was limited to a case in which the plaintiff suffered a "disability"); *Thomas v. Comfort Ctr. of Monroe, LA, Inc.*, 10-494 (La. App. 1 Cir. 10/29/10), 48 So.3d 1228, 1238 n.6 (recognizing that the presumption was not limited to workers' compensation cases, but instead was extended to include delictual actions for personal injury, including non-disabling injury).

Next, defendants argue that Ms. Aych did not have "good health" before the 2016 accident because she experienced multiple previous instances of back and neck issues, as her own testimony and her medical records indicate. Ms. Aych conceded at trial that she was involved in auto accidents in 1995, 2001, and 2008, and her medical records show that when she was being treated for fibroids in 2013, she briefly suffered from neck pain and cervical strain. According to defendants, these preexisting injuries suggest that Ms. Aych was not in "good health" before the 2016 accident, and thus the *Housley* presumption would not apply.

Trial courts are given broad discretion in formulating jury instructions, and a trial court's judgment should not be reversed as long as the charge correctly states the substance of the law. *Oregan*, 220 So.3d at 849 (citing *Adams v. Rhodia, Inc.*, 07-2110 (La. 5/21/08), 983 So.2d 798, 804). Under the *Housley* presumption, the trier of fact is not precluded from making determinations regarding the credibility of witnesses, and after weighing and evaluating the medical testimony, the trier of fact is free to accept or reject a medical expert's opinion. *Romero-Zambrano*, 165 So.3d at 146 (citing *Harrington*, 8 So.3d 30, 38-39).

The application of the *Housley* presumption is a factual issue, which is reviewed under the manifest error standard of review. *Detraz v. Lee*, 05-1263 (La. 1/17/07), 950 So.2d 557, 563. "[T]he manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts." *Adams*, 983 So.2d at 805. "[T]he mere discovery of an error in the judge's instructions does not of itself justify the appellate court conducting the equivalent of a trial *de novo*, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case." *Id*. *See also Belle Pass Terminal, Inc. v. Jolin, Inc.*, 634 So.2d 466 (La. App. 1 Cir.), *writs denied*, 92-1544, 92-1545 (La. 6/17/94), 638 So.2d 1094.

Ms. Aych's treating neurologist, Dr. Bartholomew, indicated at trial that the injuries from each of her prior accidents were likely soft-tissue injuries that reasonably dissipated and resolved within six months. The medical records support this testimony, given that Ms. Aych had discontinued her corresponding medical treatments approximately six months after the 1995, 2001, and 2008 accidents. Although the 2013 medical records mention neck pain and cervical strain, there is no indication that Ms. Aych was specifically treated for these maladies, which coincided with her treatment for fibroids and her sinus condition.

Based on the testimony and evidence in the record, and notwithstanding certain contradictory testimony from the experts stating that Ms. Aych must have suffered from disc herniations before the 2016 accident, we find the trial court did not abuse its discretion when including the *Housley* charge in the jury instructions. *See Poland v. State Farm*, 03-1417 (La. App. 1 Cir. 6/25/03), 885 So.2d 1144, 1150 (finding that preexisting degenerative disc disease does not prevent a plaintiff from establishing the pre-accident "good health" requirement for a *Housley* presumption).

Moreover, inclusion of the *Housley* charge in this instance did not prejudice defendants. Plaintiff requested past medical expenses of approximately $70,000, but the jury awarded only $37,000, possibly because the jury did not believe that the 2016 accident was the sole cause of Ms. Aych's injuries and past medical expenses. Stated differently, defendants arguably rebutted the *Housley* presumption, rendering the trial court's inclusion of the presumption in the jury instructions benign. *See Detraz*, 950 So.2d at 563.

Having reviewed the trial court's *Housley* instruction in particular as well as the jury instructions in their entirety, we find that the trial court correctly stated the substance of the law. Defendants' third assignment of error lacks merit.

## DECREE

Finding no error in the trial court's decision to deny the defendants' request for JNOV, and finding no abuse of discretion when including the *Housley* presumption in the jury instructions, the trial court's judgment entered on the jury's verdict is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 31, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-CA-89

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
DOMINICK F. IMPASTATO, III (APPELLEE)      GEORGE M. MCGREGOR (APPELLEE)      MARC L. FRISCHHERTZ (APPELLEE)
ROBERT J. DAIGRE (APPELLEE)      MATTHEW A. MANG (APPELLANT)

### MAILED

CESAR R. BURGOS (APPELLEE)
ATTORNEYS AT LAW
3535 CANAL STREET
SUITE 200
NEW ORLEANS, LA 70119

VICTORIA H. FABRE (APPELLANT)
ATTORNEY AT LAW
400 POYDRAS STREET
SUITE 2300
NEW ORLEANS, LA 70130