**DANERIC ANDERSON**        **\***        **NO. 2023-CA-0814**

**VERSUS**        **\***

        **COURT OF APPEAL**

**KENNETH BRIGGS, ABC**    **\***
**INSURANCE COMPANY,**      **FOURTH CIRCUIT**
**PORTS AMERICA**        **\***
**LOUISIANA, L.L.C., XYZ**    **STATE OF LOUISIANA**
**INSURANCE COMPANY, AND**  **\* \* \* \* \* \* \***
**JKL INSURANCE COMPANY**

CONSOLIDATED WITH:        CONSOLIDATED WITH:

DANERIC ANDERSON        NO. 2024-CA-0808

VERSUS

KENNETH BRIGGS, ABC INSURANCE
COMPANY, PORTS AMERICA
LOUISIANA, L.L.C., XYZ INSURANCE
COMPANY AND JKL INSURANCE
COMPANY

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-11757, DIVISION "F-14"
Honorable Jennifer M. Medley, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge
Dale N. Atkins)

Jake J. Weinstock
Irvy E. Cosse, III
COSSE LAW FIRM, LLC
1515 Poydras Street, Suite 900
New Orleans, LA 70112

and

Andrew D. Weinstock
DUPLASS, APLC
433 Metairie Road
Metairie, LA 70005

      Counsel for Daneric Anderson

Scott A. Soule
Frank J. Torres
Josephine H. Azuma
BLUE WILLIAMS, L.L.C.
3421 North Causeway Blvd., Suite 900
Metairie, LA 70002

      Counsel for Ports America Louisiana, L.LC., and Kenneth Briggs

Raymond C. Lewis
Walter P. Maestri
DEUTSCH KERRIGAN, L.L.P.
755 Magazine Street
New Orleans, LA 70130

      Counsel for Admiral Security Services, Inc., and Admiral Security Holdings,
LLC

**JUDGMENT REVERSED AND RENDERED; JUDGMENT VACATED;
REMANDED WITH INSTRUCTIONS
APRIL 25, 2025**

DNA

PAB

TGC

The case underlying this consolidated appeal concerns a motor vehicle accident that occurred on December 9, 2016, at the Port of New Orleans between Daneric Anderson ("Mr. Anderson") and Kenneth Briggs ("Mr. Briggs"). At the time of the accident, Mr. Anderson was acting within the course and scope of his employment with Admiral Security Holdings, L.L.C. ("ASH"), while Mr. Briggs was acting within the course and scope of his employment with Ports America Louisiana, L.L.C. ("Ports America"). In the case docketed with this Court as 2023-CA-0814 *Daneric Anderson v. Kenneth Briggs, et al.* ("2023-CA-0814"), Appellant is Mr. Anderson, and Appellees are Ports America and Mr. Briggs. In the case docketed with this Court as 2024-CA-0808 *Daneric Anderson v. Kenneth Briggs, et al.* ("2024-CA-0808"), Appellants are Ports America and Mr. Briggs, and Appellees are ASH and Admiral Security Services, Inc. ("ASSI") (collectively "Admiral").

In 2024-CA-0808, Ports America and Mr. Briggs seek review of the trial court's March 21, 2023 judgment, which granted the Motion for Summary Judgment filed by Admiral and dismissed Ports America's Third-Party Demands against Admiral with prejudice. In 2023-CA-0814, Mr. Anderson assigns error to

1

actions that occurred during the jury trial of this matter, which took place in April 2023 after the trial court dismissed Ports America's Third-Party Demands against Admiral. In particular, Mr. Anderson alleges the jury was not properly charged about Louisiana law as to the legal presumptions regarding left-turning vehicles; Admiral should not have been included on the verdict form; Mr. Anderson was erroneously denied a *Housley* jury instruction; the corporate representative for Ports America should not have been permitted to give expert testimony; Mr. Briggs should not have been allowed to testify about his personal life; and Mr. Anderson's treating physician should have been allowed to give testimony regarding the reasonable cost of the medical treatment that Mr. Anderson underwent. At the close of trial, the jury assigned fault as follows: 45% to Mr. Anderson; 40% to Admiral; and 15% to Mr. Briggs. On May 8, 2023, the trial court signed a judgment consistent with the jury's verdict.

For the following reasons, we reverse the trial court's March 21, 2023 judgment, finding the trial court erred in granting Admiral's Motion for Summary Judgment and in dismissing Ports America's Third-Party Demands against Admiral on the basis asserted in Admiral's Motion. We render judgment denying Admiral's Motion for Summary Judgment and maintaining Ports America's Third-Party Demands against Admiral. Further, finding that Admiral should not have been included on the jury verdict form, we vacate the trial court's May 8, 2023 judgment, which the trial court signed consistent with the jury's verdict; and we remand this matter for a new trial. Additionally, we find the remaining issues raised in 2023-CA-0814 and 2024-CA-0808 are rendered moot by this vacatur and remand, so we pretermit discussion of same.

2

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### Indemnification Provision

Prior to the subject automobile accident, in 2014, ASSI entered into an agreement with Ports America for ASSI to perform security and personnel transit work for Ports America at the Port of New Orleans. In pertinent part and at issue in this appeal is a provision of that agreement regarding indemnification. It states:

> **INDEMNIFICATION:** [ASSI] agrees to defend, indemnify, and hold [Ports America] and its affiliates, and its and their officers, directors, employees and agents harmless from and against any claims, demand, damages, loss, and expense, action, suit, or legal proceeding arising out of or relating to the negligence, misconduct, or other fault of [ASSI], its agents or employees in performance of its obligations arising under this Agreement.

Eventually, ASSI informed Ports America that ASH had purchased ASSI and assumed the agreement. The parties do not dispute that the agreement was in effect at the time of the subject automobile accident.

### Mr. Anderson's Petition for Damages

On December 8, 2017, Mr. Anderson filed a Petition for Damages ("Petition") in Orleans Parish Civil District Court regarding the December 9, 2016 motor vehicle accident that occurred at the Port of New Orleans. A prior Opinion by this Court described Mr. Anderson's Petition:

> In his petition, Mr. Anderson alleged that he was driving eastbound on Terminal Drive in a two-door 2000 International Bus when Mr. Briggs, who was operating a 2003 Yard Dog YH908 connected to Chassis BC392, attempted to make a left-hand turn out of the Chassis Yard onto Terminal Drive and struck Mr. Anderson's vehicle. At the time of the accident, Mr. Briggs was an employee of Ports America and was operating within the course and scope of his employment. Mr. Anderson named Mr. Briggs, Ports America, and Ports America's liability and uninsured motorist insurers as defendants in his petition.

*Anderson v. Briggs*, 2023-0483, pp. 1-3 (La. App. 4 Cir. 1/10/24), 381 So.3d 165, 166-67 (footnote omitted). Of note, Mr. Anderson did not assert any allegations of negligence on the part of Admiral in his Petition.

In response to Mr. Anderson's Petition, on April 6, 2018, Ports America filed an Answer. In pertinent part, Ports America asserted no affirmative defenses in its Answer whereby it alleged negligence on the part of Admiral.

### Ports America's Third-Party Demands

Thereafter, Ports America filed Third-Party Demands against Admiral, one against ASSI and one against ASH. On September 14, 2020, Ports America filed its Third-Party Demand against ASSI, which stated, in pertinent part:

> [I]n the event, and only in the event, there is judgment in favor of Defendant/Third-Party Plaintiff [Ports America] and against original Plaintiff Daneric Anderson, [Ports America] avers that [it] is entitled to full indemnification of all sums due, as well as reimbursement of all defense costs and attorneys' fees in connecti[on] with defending this matter, by . . . ASSI.

Ports America then quoted the indemnification provision from its agreement with Admiral. Thereafter, Ports America explained that because Mr. Anderson, an employee of ASSI, made a claim against Ports America for alleged liability on behalf of Mr. Briggs, an employee of Ports America, in the event Mr. Anderson was found to be at fault for the subject accident, then Ports America was entitled to defense, indemnification, costs, and attorney's fees from ASSI. Ports America then prayed for "full indemnification of any costs and expenses incurred for defending this suit."

On December 22, 2021, after learning that ASH was the employer of Mr. Anderson, not ASSI, Ports America filed a Third-Party Demand against ASH. It stated, in pertinent part:

4

Ports America asserts that it is entitled to defense, indemnification, hold harmless, costs, and attorney's fees, from Third[-] Party Defendant Admiral Services Holdings, L.L.C.

WHEREFORE, Ports America Louisiana, L.L.C, prays for full indemnification for any costs and expenses incurred for defending this suit against original Plaintiff, Daneric Anderson . . . .

Neither of Ports America's Third-Party Demands alleged negligence on the part of Admiral. In response to these Third-Party Demands, Admiral filed a Motion for Summary Judgment.

## Admiral's Motion for Summary Judgment

On February 3, 2023, Admiral filed its Motion for Summary Judgment, therein contending the issues raised were purely legal, with no facts in dispute. Admiral argued the agreement between Admiral and Ports America required Admiral to indemnify Ports America only to the extent Admiral or its employees were negligent and did not entitle Ports America to "full indemnification" or "reimbursement of all defense costs and attorney's fees incurred in defending the subject suit." As summarized by Admiral, in its Third-Party Demands, Ports America sought to expand the language of their agreement to the effect that Admiral owed a defense and indemnity for damages arising from Ports America's own alleged negligence. Admiral noted in its Motion, however, that while this was "not clearly stated in [Ports America's] Third-Party Demands," Ports America took such a position via its Third-Party Demands. Admiral acknowledged that contractual indemnity for an indemnitee's own negligence is not prohibited by law; but Admiral argued the agreement between Admiral and Ports America did not contain the required unequivocal language to establish such indemnity. Further, Admiral asserted that when it is unclear if an indemnity agreement provides

5

coverage for the indemnitee's own negligence, there is a presumption that the indemnity agreement does not provide that type of coverage.

Admiral noted Mr. Anderson's Petition made no allegations against Admiral and did not name ASSI or ASH as defendants; rather, the only allegations of negligence made by Mr. Anderson were against Mr. Briggs and Ports America. Similarly, Admiral contended Ports America's Third-Party Demands made no allegations of negligence against ASSI or ASH, instead only claiming indemnity from Admiral if there were to be judgment in favor of Ports America and against Mr. Anderson. Accordingly, Admiral listed three scenarios that could result from the jury's ultimate deliberation in this matter: 1) allocation of 100% fault to Mr. Anderson; 2) allocation of 100% fault to Ports America; or 3) allocation of fault to Mr. Anderson and Ports America. Admiral stated:

> The contract between Ports America and ASSI or ASH does not contain language that unequivocally reflects an intention that ASSI or ASH would defend and indemnify Ports America for damages caused by its negligence. ASSI and ASH pray[] that summary judgment be granted recognizing this contractual reality.

In its Motion for Summary Judgment, Admiral requested dismissal with prejudice of all of Ports America's claims in its Third-Party Demands.

## Opposition to Admiral's Motion for Summary Judgment by Ports America and Mr. Briggs

On February 23, 2023, Ports America and Mr. Briggs filed an Opposition to Admiral's Motion for Summary Judgment. Therein, they argued "the evidence demonstrates [Mr. Anderson] was at fault for this accident and that the contract at the center of this controversy establishes Ports America is to be provided a full defense, indemnity, and to be held harmless by ASSI/ASH." Ports America and Mr. Briggs further stated the agreement called for the "full" defense and indemnity

of Ports America by Admiral "under all circumstances, including this present litigation." They requested that the trial court deny Admiral's Motion for Summary Judgment and find the agreement mandated Admiral to defend, indemnify, and hold Ports America harmless in the present litigation.

**March 21, 2023 Judgment on Admiral's Motion for Summary Judgment**

On March 21, 2023, the trial court issued a judgment, which granted Admiral's Motion for Summary Judgment and dismissed Ports America's Third-Party Demands against Admiral with prejudice, thereby dismissing Admiral from the lawsuit. The judgment stated:

> **IT IS ORDERED, ADJUDGED AND DECREED** that Judgment be entered in favor of Third[-]Party Defendants, Admiral Security Services, Inc., and Admiral Security Holdings, LLC and against Defendant, Ports America Louisiana, LLC in which Third[-]Party Defendants, Admiral Security Services, Inc., and Admiral Security Holdings, LLC's Motion for Summary Judgment, is hereby **GRANTED**.
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that . . . Judgment be entered in favor of Third[-]Party Defendants, Admiral Security Services, Inc., and Admiral Security Holdings, LLC and against Defendant, Ports America Louisiana, LLC in which all claims of Defendant, Ports America Louisiana, LLC against Third[-]Party Defendants, Admiral Security Services, Inc., and Admiral Security Holdings, LLC are hereby **DISMISSED WITH PREJUDICE**.

On that same day, the trial court also issued reasons for judgment, which stated, in pertinent part, that the trial court was "adopt[ing] *in toto*, the Motion for Summary Judgment, filed on February 3, 2023, on behalf of . . . [ASSI] and [ASH] as its written reasons for judgment."

Thereafter, on March 28, 2023, Ports America filed a Motion for New Trial regarding the trial court's March 21, 2023 judgment, which the trial court

7

ultimately denied. Ports America and Mr. Briggs' timely appeal to this Court followed.

## Trial and May 8, 2023 Judgment

The parties subsequently proceeded to trial before a jury from April 10 - 13, 2023. Relevant to this appeal, on the jury verdict form, the first and second jury interrogatories asked the jurors to determine whether Mr. Briggs and Mr. Anderson, respectively, were—by a preponderance of the evidence—at fault for the subject accident. Then, the third interrogatory stated:

> 3. Please assign a percentage of fault to each of the following parties:
>
> ___ Kenneth Briggs/Ports America Louisiana L.L.C.
>
> ___ Danerica [sic] Anderson (if you answered no to question 2. You must put a zero.)
>
> ___ Admiral Security Services, Inc.

Thereafter, the trial court signed a judgment so as to reflect the jury's verdict. It stated, in pertinent part:

> **IT IS ORDERED, ADJUDGED AND DECREED** that there be judgment in favor of plaintiff, Daneric Anderson, and against Defendants, Kenneth Briggs and Ports America Louisiana LLC, for the personal injuries and damages in the full amount of $104,310.00, which represents the jury's apportionment of fault as to these defendants.
>
> **IT IS ORDERED, ADJUDGED AND DECREED** that fault be apportioned as follows: Kenneth Briggs/Ports America Louisiana, L.L.C. 15% Daneric Anderson 45% Admiral Security Services 40% which apportionment has already been accounted for in the above paragraphs.

Mr. Anderson filed a "Motion for Judgment Notwithstanding the Verdict, or in the Alternative, Motion for New Trial." The trial court denied that motion, and Mr. Anderson's timely appeal to this Court followed.

8

# ASSIGNMENTS OF ERROR

In 2024-CA-0808, Ports America and Mr. Briggs assert four assignments of error:

[(1)]. The [trial] court erred in granting ASSI/ASH's Motion for Summary Judgment based upon the plain language of the contract between ASSI and Ports America, L.L.C., at the time of the alleged accident that ASSI would remain responsible for its fault and its employees' fault.

[(2)]. The [trial] court erred in its application of [La. C.C.P. art.] 966(F) by rendering judgment on issues not set forth in the motion under consideration.

[(3)]. The [trial] court erred in prematurely dismissing ASSI/ASH with prejudice, as judgment and allocation of fault had not yet been rendered, an essential element to determining the outcome of a defense and indemnity agreement.

[(4)]. The [trial] court erred in its application of La. C.C.P. [a]rt. 966(D)(1).

In 2023-CA-0814, Mr. Anderson asserts six assignments of error:

(1) The Jury was not properly charged regarding Louisiana law as to the legal presumptions that exist as to left-turning vehicles.

(2) Admiral Security Services, Inc./Admiral Security Holdings, LLC should not have been included on the verdict form, and their inclusion, over [Mr. Anderson]'s objections, resulted in a compromised verdict.

(3) [Mr. Anderson] was denied a *Housley* jury instruction, despite unanimous testimony from the medical experts that the lumbar and left-knee symptomatology experienced by [Mr. Anderson] was caused by the December 8, 2016 crash.[1]

---

[1] As this Court has explained, with the *Housley* presumption, a tort plaintiff, who must establish "by a preponderance of the evidence that the accident more probably than not caused the claimed disabling condition" might:

be aided by a presumption of causation "if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition."

9

(4) The Corporate Representative for Ports America, Emmett Wright, was permitted to give expert testimony, presumably as an "expert" pursuant to Louisiana Code of Evidence 701,[2] but Emmett Wright did not possess personal knowledge, in open defiance of Louisiana Code of Evidence Article 602's requirement.[3]

(5) Th[e] [trial court] erred in allowing inadmissible (irrelevant) testimony from Defendant-Appellee, Kenneth Briggs[,] regarding his personal life, all of which was designed to influence the emotions of the jury.

(6) [Mr. Anderson]'s treating physician, Dr. Everett Robert, M.D., was not allowed to give testimony regarding the reasonable cost of the medical treatment that [Mr. Anderson] underwent.

---

*Akers v. Douglas*, 2024-0033, p. 17 (La. App. 4 Cir. 8/16/24), 399 So.3d 656, 669 (quoting *Ruffin v. Burton*, 2008-0893, pp. 4-5 (La. App. 4 Cir. 5/27/09), 34 So.3d 301, 303-04). *See also Housley v. Cerise*, 579 So.2d 973, 980 (La. 1991). The *Housely* presumption can be given as a charge to the jury:

A *Housley* [jury] charge states that a fact finder may presume causation in personal injury cases only when the plaintiff can prove that (1) he was in good health before the accident at issue; (2) after the accident, symptoms of the alleged injury appeared and continuously manifested themselves; and (3) there is a reasonable possibility of causation between the accident and the claimed injury.

*Aych v. State Farm Mut. Auto. Ins. Co.*, 2023-89, p. 9 (La. App. 5 Cir. 10/31/23), 374 So.3d 1000, 1007 (citing *Oregan v. Cashio*, 2016-563, p. 6 (La. App. 5 Cir. 4/26/17), 220 So.3d 845, 850).

[2] Louisiana Code of Evidence Article 701 is titled "Opinion testimony by lay witnesses." It states:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:

(1) Rationally based on the perception of the witness; and

(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

[3] Louisiana Code of Evidence Article 602 is titled "Lack of Personal Knowledge." It establishes:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This Article is subject to the provisions of Article 703, relating to opinion testimony by expert witnesses.

Based on our review of the consolidated record and the parties' briefs, we have determined that resolution of this matter hinges on answering the following questions: 1) whether the agreement between Ports America and Admiral unequivocally established that Admiral would defend and indemnify Ports America for its own negligence; 2) if not, whether the trial court nonetheless erred in granting Admiral's Motion for Summary Judgment and dismissing Ports America's Third-Party Demands with prejudice on that basis (Ports America and Mr. Briggs' first and third assignments of error, respectively, in 2024-CA-0808); 3) whether Admiral should have been included on the jury verdict form (Mr. Anderson's second assignment of error in 2023-CA-0814); and 4) whether we should consider and resolve the remaining assignments of error in 2023-CA-0814 and 2024-CA-0808 in light of our resolution of issues one through three. Because the first two issues concern the trial court's grant of Admiral's Motion for Summary Judgment and dismissal of Ports America's Third-Party Demands on the basis asserted in Admiral's Motion for Summary Judgment, we begin our discussion section with the principles and standard of review applicable to the summary judgment procedure. We then resolve each of the issues in turn.

## DISCUSSION

### Summary Judgment Principles and Standard of Review

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id.* A trial court grants a motion for summary judgment if "[a]fter an opportunity for adequate discovery," the mover's "motion, memorandum, and supporting documents show

11

that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

On a motion for summary judgment, "[t]he burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). In particular, a "party seeking summary judgment has the burden of proving there is no genuine issue of material fact." *Bankers Ins. Co. v. EMIII Holdings, LLC*, 2024-0386, p. 6 (La. App. 4 Cir. 12/16/24), ___ So.3d ___, ___, 2024 WL 5116650, at *13 (quoting *Haynes v. Sewerage & Water Bd. of New Orleans*, 2023-0678, p. 13 (La. App. 4 Cir. 7/31/24), 399 So.3d 626, 637). "[A] genuine issue" as this Court has defined it, is "a triable issue." *Id.* More specifically, "an issue is genuine if reasonable persons could disagree" about the issue. *Id.* at p. 14, ___ So.3d at ___, 2024 WL 5116650, at *6 (quoting *Haynes*, 2023-0678, pp. 14-15, 399 So.3d at 638). However, "[t]here is no need for a trial on [the] issue" when "reasonable persons could reach only one conclusion" on that issue based on "the state of the evidence." *Id.* (quoting *Haynes*, 2023-0678, p. 14, 399 So.3d at 638). A material fact is defined as one "whose 'existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery.'" *Id.* When a particular fact "potentially insure[s] or preclude[s] recovery, affect[s] a litigant's ultimate success, or determine[s] the outcome of the legal dispute," then it constitutes a material fact. *Id.* (alterations in original). For a court to determine whether "a particular disputed fact is material or not," the court must look to "the substantive law applicable to the case . . . because the applicable substantive law determines materiality." *Id.*

If and when the party moving for summary judgment satisfies the initial burden of proving no genuine issue of material fact, then "the burden shifts to the party opposing summary judgment to present factual support sufficient to show he

12

[or she] will be able to satisfy the evidentiary burden at trial." *Bankers Ins. Co.*, 2024-0386, p. 14, ___ So.3d at ___, 2024 WL 5116650, at *7 (alteration in original) (quoting *Haynes*, 2023-0678, p. 14, 399 So.3d at 638). "[I]f the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him [or her] to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966(D)(1). "[T]he burden shift[s] from the mover to the adverse party" only if "the motion has been made and properly supported." *Bankers Ins. Co.*, 2024-0386, p. 15, ___ So.3d at ___, 2024 WL 5116650, at *7 (quoting *Haynes*, 2023-0678, p. 15, 399 So.3d at 638).

Upon the burden shifting, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). In producing this support, "[the] adverse party may not rest on the mere allegations or denials of his [or her] pleading, but his [or her] response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). When the trial court considers a motion for summary judgment, "the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent." *Bankers Ins. Co.*, 2024-0386, p. 15, ___ So.3d at ___, 2024 WL 5116650, at *7 (quoting *Haynes*, 2023-0678, p. 15, 399 So.3d at 638). After the burden has shifted, "if the party opposing the motion fails to establish the existence of a genuine issue for trial, 'summary

judgment, if appropriate, shall be rendered against him [or her].'" *Id.* (quoting La. C.C.P. art. 967(B)). The reason is that "[w]hen the party opposing the motion for summary judgment fails to provide factual evidence sufficient to establish that he [or she] will be able to satisfy his [or her] evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment is appropriate." *Bankers Ins. Co.*, 2024-0386, p. 15, ___ So.3d at ___, 2024 WL 5116650, at *7 (alterations in original) (quoting *Haynes*, 2023-0678, p. 15, 399 So.3d at 639).

When an appellate court reviews a trial court's ruling on a motion for summary judgment, the appellate court reviews the matter *de novo*, using "the same criteria that govern the trial court's determination of whether summary judgment is appropriate." *Bankers Ins. Co.*, 2024-0386, p. 16, ___ So.3d at ___, 2024 WL 5116650, at *7 (quoting *Haynes*, 2023-0678, p. 16, 399 So.3d at 639). To determine whether summary judgment was appropriate, the "appellate court[] ask[s] the same questions the trial court does," specifically "whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law." *Id.* (alterations in original). With these principles in mind, we now turn our discussion to resolution of the four issues outlined previously.

### 1) Whether, as Argued by Admiral in Its Motion for Summary Judgment, the Agreement between Ports America and Admiral Did Not Entitle Ports America to Defense and Indemnification for Its Own Negligence

As stated before, in its Motion for Summary Judgment, Admiral sought a ruling that Ports America was not entitled to defense and indemnity for Ports America's own negligence. That is, Admiral argued the indemnity provision in its contract with Ports America did not contain language unequivocally reflecting an intention that Admiral would defend and indemnify Ports America for damages caused by Ports America's own negligence and sought summary judgment

14

"recognizing this contractual reality." In its reply brief to this Court, Ports America clarifies that it was not and "is not requesting any indemnity for [its] own assigned negligence/the negligence of [its] employee," Mr. Briggs. In fact, as previously summarized, in its Motion for Summary Judgment, Admiral acknowledged that Ports America's Third-Party Demands did "not clearly state[]" that Ports America was seeking indemnification and defense for its own negligence. Thus, before determining whether the trial court correctly granted Admiral's Motion for Summary Judgment and dismissed Ports America's Third-Party Demands, we first consider if the agreement between Ports America and Admiral reflected that Admiral would defend and indemnify Ports America for its own negligence.

Preliminarily, as this Court recently held, "An indemnity agreement is a specialized form of contract." *Riggio v. Ports Am. La., L.L.C.*, 2024-0436, p. 10 (La. App. 4 Cir. 12/5/24), ___ So.3d ___, ___, 2024 WL 4986530, at *4 (citing *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La. 1987)). Specifically, it constitutes "a contract wherein a party (the indemnitor) agrees to protect another (the indemnitee) against damages incurred by the latter as a result of his breach of a duty owed to a third party." *Id.* at p. 11, ___ So.3d at ___, 2024 WL 4986530, at *4 (citing *Bennett v. DEMCO Energy Servs., LLC*, 2023-01358, pp. 3-4 (La. 5/10/24), 386 So.3d 270, 273). The concept of indemnity stems from "the general obligation to repair the damage caused by one's fault under La. C.C. art. 2315.[4]" *Id.* (citing *Bennett*, 2023-01358, p. 3, 386 So.3d at 273). Because an indemnity agreement constitutes a specialized form of contract, it is subject to the interpretation principles applicable to contracts. *Akers v. Columns Hotel, Inc.*, 2016-0870, p. 5

---

[4] Louisiana Civil Code Article 2315(A) states, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

(La. App. 4 Cir. 5/10/17), 220 So.3d 138, 142 (quoting *Yocum v. City of Minden*, 566 So.2d 1082, 1086 (La. App. 2nd Cir. 1990)). One such interpretation principle is that "[i]nterpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. Another interpretation principle is established in La. C.C. art. 2046, which states, "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Yet another interpretation principle is that "a contract [is] subject to interpretation on the four corners of the instrument without the necessity of extrinsic evidence" and "is interpreted as a matter of law." *Fertitta v. Regions Bank*, 2020-0300, p. 10 (La. App. 4 Cir. 12/9/20), 311 So.3d 445, 452 (quoting *New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 2009-1433, p. 9 (La. App. 4 Cir. 5/26/10), 40 So.3d 394, 401). Only if a court has examined the four corners of the contract and determined the contract is ambiguous will the court construe the contract "according to the intent of the parties, which is to be inferred from all of the surrounding circumstances." *Id.* at p. 11, 311 So.3d at 453 (quoting *Kirksey*, 2009-1433, p. 10, 40 So.3d at 401-02).

Turning to interpretation of indemnity agreements specifically, this Court has explained, "It is well settled in Louisiana jurisprudence that a contractual indemnity agreement will not be construed to require the indemnitor to indemnify the indemnitee for the indemnitee's own negligence." *Morella v. Bd. of Comm'rs of Port of New Orleans*, 2004-0312, p. 12 (La. App. 4 Cir. 10/27/04), 888 So.2d 321, 327. Rather, an indemnity agreement is only construed to indemnify an indemnitee against losses resulting to him through his own negligent act if that intention was expressed in unequivocal terms. *Id.* (quoting *Polozola v. Garlock, Inc.*, 343 So.2d 1000, 1003 (La. 1977)). For example, in *Polozola*, the subject

16

"agreement state[d] that National Maintenance will indemnify Dow, its agents, servants or employees against claims made by National Maintenance or its subcontractors, agents, servants or employees because of injury '*whether caused by Dow's negligence or otherwise.*'" 343 So.2d at 1002 (emphasis added). The Louisiana Supreme Court held this language established the agreement required National Maintenance to indemnify Dow employees against losses resulting to them through their own negligence. *Id.*, 343 So.2d at 1003.

In the matter *sub judice* there is nothing in the indemnity provision that unequivocally states that Ports America will be indemnified for its own negligence. The subject indemnification agreement stated Admiral agreed to defend, indemnify, and hold Ports America harmless from and against any claims, demand, damages, loss, and expense, action, suit, or legal proceeding arising out of or relating to the negligence, misconduct, or other fault of *Admiral* in performance of the agreement between Admiral and Ports America. After construing the instant indemnity agreement in accordance with the above-stated rule, we find it did not constitute an agreement by which Admiral would indemnify Ports America against losses resulting from Ports America's own negligence because the indemnification provision contained no unequivocal intention to that effect. Rather, it constituted an agreement by which Admiral would indemnify Ports America against losses resulting from Admiral's own negligence.

### 2) Whether, Despite the Lack of Such Unequivocal Language, Summary Judgment and Dismissal of Ports America's Third-Party Demands Were Appropriate

As previously stated, the trial court not only granted Admiral's Motion for Summary Judgment but did so on the basis asserted in Admiral's Motion and further found that dismissal of Ports America's Third-Party Demands against

17

Admiral was also warranted. We must next consider whether, despite the lack of such unequivocal language, summary judgment and dismissal of Ports America's Third-Party Demands were appropriate actions for the trial court to take.

In *Morella*, this Court explained that when an indemnitee's "negligence or lack thereof has not yet been determined, any obligations that [the indemnitor] has . . . to indemnify and defend . . . have not yet arisen," such that the indemnitee's claims for indemnification and defense are premature. 2004-0312, p. 14, 888 So.2d at 328. However, in *Bennett*, the Louisiana Supreme Court emphasized that "the distinction between the right to make a claim for indemnity and the right to collect indemnity" is important "for purposes of judicial economy" in terms of disposing of all phases of an action in a single proceeding. 2023-01358, p. 8 (La. 5/10/25), 386 So.3d 270, 276. As the Louisiana Supreme Court further explained:

> In other words, asserting a claim for indemnity, arising out of the same facts and circumstances, is not premature before a judicial finding of liability. The right to collect on an indemnity agreement is determined upon judgment or finding of liability or loss, but there is no prohibition on asserting a claim for indemnity in the same proceeding. Again, to require a party to file a separate indemnification action after a finding of liability runs afoul of our well-established principles of judicial efficiency.

*Id.* at pp. 8-9, 386 So.3d at 276 (footnotes omitted). In terms of judicial efficiency, "the purpose of the impleader procedure . . . is to 'avoid multiple lawsuits; to facilitate and expedite the trial of litigation; and, wherever possible, consistent with the orderly procedure and due regard for the rights of all litigants, to dispose of all three phases of an action in a single proceeding.'" *Conrad Shipyard, L.L.C. v. Franco Marine 1 LLC*, 431 F.Supp.3d 839, 848 (U.S. E.D. La. 2020) (quoting *Breaux v. Texas & Pac. Ry. Co.*, 147 So.2d 693, 698 (La. App. 1st Cir. 1962)). In support of this holding, the Louisiana Supreme Court further noted in *Bennett* that

"La. C.C.P. arts. 1111 - 1116 . . . state, as a general matter, that a third[-]party demand is not premature when asserted before a finding of liability." *Id.* at p. 6, 386 So.3d at 274 (citing *Moreno v. Entergy Corp.*, 2010-2281, p. 5 (La. 2/18/11), 62 So.3d 704, 708 (Victory, J., concurring)). In fact, the Louisiana Supreme Court observed La. C.C.P. art. 1113 "provides 'harsh consequences for a defendant who fails to bring in such a third[-]party defendant.'" *Id.* at p. 6, 386 So.3d at 275. It states, in pertinent part:

> A defendant who does not bring in as a third[-]party defendant a person who is liable to him for all or part of the principal demand does not on that account lose his right or cause of action against such person, unless the latter proves that he had means of defeating the action which were not used, because the defendant either failed to bring him in as a third[-]party defendant, or neglected to apprise him that the suit had been brought.

La. C.C.P. art. 1113.

Discussing a defendant's ability to bring in a third person, La. C.C.P. art. 1111 provides that "[t]he defendant in a principal action by petition may bring in any person, including a codefendant, who is his warrantor, or who is or may be liable to him for all or part of the principal demand." As this Court has previously explained, "A third[-]party demand is a device principally used for making claims of contribution or indemnity in the event the defendant loses on the principal demand." *Herman v. Tracage Dev., L.L.C.*, 2016-0082, 0083, p. 7 (La. App. 4 Cir. 9/21/16), 201 So.3d 935, 941 (citing *Union Serv. & Maint. Co. v. Powell*, 393 So.2d 94, 95 (La. 1980)). If a third-party demand fails to "allege facts indicating that the third[-]party defendant is either a warrantor of the third[-]party plaintiff, or is liable for all or part of the principal demand, the third[-]party demand fails to state a cause of action." *Id.* at pp. 7-8, 201 So.3d at 941 (first citing *Boyer v. Trinity Universal Ins. Co. of Kan., Inc.*, 576 So.2d 444, 446 (La. 1991); then citing *Powell*,

393 So.2d at 95-96; and then citing *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 732 (La. 1973)). Such was not the case here.

In its Third-Party Demands, Ports America explained that the plaintiff in the subject suit, Mr. Anderson, was an employee of Admiral and that there had not yet been a determination of fault for the accident, including of Mr. Anderson's potential fault. Ports America further pointed to the indemnification provision in the agreement between it and Admiral by which Admiral agreed to defend, indemnify, and hold Ports America harmless from and against any claims, demand, damages, loss, and expense, action, suit, or legal proceeding arising out of or relating to the negligence, misconduct, or other fault of Admiral or its employees in performance of the agreement between Admiral and Ports America. Thus, as Ports America correctly explained in its Third-Party Demands, "*in the event Mr. Anderson was found to be at fault for the subject accident*, then Ports America was entitled to defense, indemnification, hold harmless, costs and attorney's fees from" Admiral to that degree of fault. (Emphasis added.) In its Third-Party Demands, Ports America established that Admiral was its warrantor for any fault attributable to Mr. Anderson thereby stating a cause of action against Admiral. Via its Third-Party Demands, Ports America sought to bring Admiral into Mr. Anderson's lawsuit and requested defense and indemnification per the indemnity agreement between them.

Based on *Morella* and *Bennett*, Ports America had a right to *claim* indemnity and defense at that time but not the right to *collect* indemnity and defense costs from Admiral because there had not yet been an allocation of fault to establish the percentage of indemnification and defense for which Admiral might be responsible, i.e., any fault attributed to its employee, Mr. Anderson. Because Ports

20

America stated a cause of action against Admiral in its Third-Party Demands, to grant Admiral's Motion for Summary Judgment and dismiss Ports America's defense and indemnity claim prior to the liability determination, as the trial court did, was procedurally improper and runs afoul of principles of judicial efficiency. By doing so, the trial court effectively dismissed the indemnity provision in its entirety and failed to consider the defense and indemnification potentially owed to Ports America for any fault that could ultimately be assigned to Mr. Anderson. The trial court should have deferred its determination of the import of the indemnity provision between Admiral and Ports America until after the jury made its liability determination in April 2023. *See Suire v. Lafayette City-Par. Consol. Gov.*, 2004-1459, 1460, 1466, pp. 17-18 (La. 4/12/05), 907 So.2d 37, 51 (holding the Louisiana Third Circuit Court of appeal erred in finding "a duty to defend, or pay for defense costs, under the terms of the contractual indemnity provision" because the "lawsuit [was] still pending, and no determination of liability ha[d] been made," such that the claim for defense and indemnity needed to be "defer[red] . . . until the lawsuit . . . concluded and liability [was] determined"). *Cf. Bollinger Marine Fabricators, LLC v. Marine Travelift, Inc.*, 2015 WL 4937839, at *4 (E.D. La. 2015) (holding the plaintiff's claim for fees and expenses was not premature because "there [was] no dispute that the underlying lawsuit . . . concluded and that [the plaintiff] . . . incurred defense costs" during it).

Thus, we conclude the trial court erred by prematurely granting Admiral's Motion for Summary Judgment and dismissing Ports America's claims in its Third-Party Demands simply based on the finding that Ports America was not entitled to defense and indemnification for its own negligence. Because Ports America had a right to claim defense and indemnification based on the indemnity

provision and delineated a claim for same in its Third-Party Demands, the trial court should have denied Admiral's Motion for Summary Judgment insofar as Admiral sought complete dismissal of Ports America's claims against it. Accordingly, we reverse the trial court's March 21, 2023 judgment, which granted Admiral's Motion for Summary Judgment and dismissed Ports America's Third-Party Demands with prejudice. We render judgment denying Admiral's Motion for Summary Judgment and maintaining Ports America's Third-Party Demands.

### 3) Whether Admiral Should Have Been Included on the Jury Verdict Form

As stated previously, in 2023-CA-0814 Mr. Anderson assigns error to actions that occurred during the jury trial of this matter, which took place in April 2023 after the trial court dismissed Ports America's Third-Party Demands against Admiral. We next consider the second assignment of error Mr. Anderson asserted in 2023-CA-0814, wherein he contends that Admiral should not have been included on the jury verdict form. We do so after recognizing that resolution of this assignment of error may be dispositive of the remaining assignments of error in 2023-CA-0814 and 2024-CA-0808. In this assignment of error, Mr. Anderson explains that the trial court permitted Ports America and Mr. Briggs to offer evidence to the jury in connection with a proposed affirmative defense to the effect that Admiral had improperly or negligently trained Mr. Anderson in the operation of the bus he drove at the time of the subject accident. However, as explained by Mr. Anderson, Ports America and Mr. Briggs failed to specifically plead this as an affirmative defense, such that Ports America and Mr. Briggs should not have been allowed to present this evidence to the jury and Admiral should not have been included on the jury verdict form. As argued by Mr. Anderson, "[t]he inclusion of Admiral . . . on the verdict form, based on an unpled affirmative defense that was

22

raised for the first time via e-mail days before trial, which was improper, . . . led to a compromised and tainted verdict."

Before discussing the merits of Mr. Anderson's argument, we begin with the standard of review applicable to this assignment of error. As this Court has previously explained, an appellate court applies the manifest error-abuse of discretion standard of review when considering a trial court's jury verdict form. *Danna v. Ritz-Carlton Hotel Co.*, 2020-0116, 0187, 0318, p. 22 (La. App. 4 Cir. 3/24/21), 365 So.3d 679, 696 (citing *Young v. Logue*, 1994-0585, p. 23 (La. App. 4 Cir. 5/16/95), 660 So.2d 32, 48). If a jury verdict form is misleading or confusing, then this may constitute reversible error. *Id.* (citing *McMillion Dozer Service, Inc.*, 93-590 at p. 2, 639 So.2d at 768). An appellate court should set aside a jury verdict form if it was "so inadequate or incorrect as to preclude the jury from reaching a verdict based on the law and the facts." *Id.* at p. 23, 365 So.3d at 696-97 (quoting *Young*, 1994-0585, p. 23, 660 So.2d at 48). With this standard of review in mind, we agree with Mr. Anderson that Admiral should not have been included on the jury verdict form: we find Admiral's inclusion was erroneous and constituted reversible error for two reasons.

First, in terms of fault allocation, the general rule is that the trier of fact must consider the fault of all persons and apportion fault accordingly. That is, La. C.C.P. art. 1812 is titled "Special verdicts." It provides, in pertinent part:

> C. In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:

> (1) Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:

23

(a) Whether such fault was a legal cause of the damages, and, if so:

(b) The degree of such fault, expressed in percentage.

(2)(a) If appropriate under the facts adduced at trial, whether another party or nonparty, other than the person suffering injury, death, or loss, was at fault, and, if so:

(i) Whether such fault was a legal cause of the damages, and, if so:

(ii) The degree of such fault, expressed in percentage.

(b) For purposes of this Paragraph, nonparty means a person alleged by any party to be at fault, including but not limited to:

(i) A person who has obtained a release from liability from the person suffering injury, death, or loss.

(ii) A person who exists but whose identity is unknown.

(iii) A person who may be immune from suit because of immunity granted by statute.

La. C.C.P. art. 1812(C). However, the more specific rule is that the fault of one dismissed via summary judgment is not to be considered by the trier of fact and no fault may be assigned to one dismissed via summary judgment:

When the court renders judgment in accordance with the provisions of [La. C.C.P. art. 966] that a party or nonparty is not negligent, is not at fault, or did not cause in whole or in part the injury or harm alleged, that party or nonparty shall not be considered in any subsequent allocation of fault. Evidence shall not be admitted at trial to establish the fault of that party or nonparty, except that evidence may be admitted to establish the fault of a principal when the party or nonparty acted pursuant to a mandate or procuration. During the course of the trial, no party or person shall refer directly or indirectly to any such fault, nor shall that party or nonparty's fault be submitted to the jury or included on the jury verdict form except where evidence is admitted of the acts of the party or nonparty for purposes of establishing the fault of the party or nonparty's principal. This Paragraph does not apply if the trial or appellate court's judgment rendered in accordance with [La. C.C.P. art. 966] is reversed. If the judgment is reversed by an appellate court, the reversal is applicable to all parties.

La. C.C.P. art. 966(G).

As the Louisiana Supreme Court has explained, when statutes conflict, "the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." *LeBreton v. Rabito*, 1997-2221, p. 7 (La. 7/8/98), 714 So.2d 1226, 1229. In this instance, the provisions of the more specific statute directed at the matter, La. C.C.P. art. 966(G), should have prevailed over the provisions of the more general provision, La. C.C.P. art. 1812. As such, in granting Admiral's Motion for Summary Judgment and dismissing Ports America's Third-Party Demands with prejudice, the trial court should not have included Admiral on the jury verdict form because doing so contravened La. C.C.P. art. 966(G). *See Amedee v. Aimbridge Hosp. L.L.C.*, 2021-01906, p. 20 (La. 10/21/22), 351 So.3d 321, 334-335 (holding that, although the fault of all parties is to be quantified, the trier of fact is not to consider the fault of a party dismissed from a suit on a summary judgment pursuant to La. C.C.P. art. 966(G)).

Second, even if the trial court had correctly denied Admiral's Motion for Summary Judgment and maintained Ports America's Third-Party Demands (as we have done in this Opinion), the trial court nonetheless should not have included Admiral on the jury verdict form. As quoted above, La. C.C.P. art 1812(C)(2)(a) provides for a party or nonparty to be on the jury verdict form when there is a need for an allocation of fault. The article defines nonparty as "a person alleged by any party to be *at fault*." La. C.C.P. art. 1812(C)(2)(b) (emphasis added). A defendant can assert the fault of another via an affirmative defense. Louisiana Code of Civil Procedure Article 1005 provides that a defendant's "answer shall set forth affirmatively negligence, or fault of the plaintiff and others." A court may consider an incidental demand containing an affirmative defense, such as a third-party

demand, as an affirmative defense even if a party has improperly designated the pleading. La. C.C.P. art. 1005. In discussing La. C.C.P. art. 1005, this Court has noted the policy underlying the article is to give a plaintiff fair notice of, and an opportunity to prepare an opposition to, a defense and prevent trial by ambush. *Harvey v. Hamby*, 2023-0084, p. 19 (La. App. 4 Cir. 10/4/23), 376 So.3d 225, 240. The Supreme Court has long indicated, "The failure to set forth affirmative defenses waives those defenses and bars the introduction of evidence offered in connection with an affirmative defense." *Amedee*, p.17, 351 So.3d at 333 (citing *Davis v. Nola Home Constr., L.L.C.*, 2016-1274, p. 9 (La. App. 4 Cir. 6/14/17), 222 So.3d 833, 841).

In the matter *sub judice*, none of Ports America's relevant pleadings—its Answer and Third-Party Demands—assert fault on the part of Admiral. Ports America's Answer alleged, in part, that the accident resulted from Mr. Anderson in creating a sudden emergency, failing to maintain control, driving in a careless manner, failing to keep a proper lookout, failing to see what he should have seen, and failing to yield. However, none of these allegations speak to a deficiency in Mr. Anderson's training so as to have sufficiently informed him of the affirmative defense of fault of another, i.e., Admiral. Ports America brought Admiral into the case via its Third-Party Demands, which solely asserted a contractual claim for indemnity. Ports America's Third-Party Demands did not assert any fault on the part of Admiral whether in training Mr. Anderson or otherwise. The trial court committed manifest error and abused its discretion in including Admiral on the jury verdict form.

We must next consider how to proceed in light of our conclusion that the trial court erred in permitting Ports America and Mr. Briggs to introduce evidence

of Admiral's alleged fault and in including Admiral on the jury verdict form. In particular, the first and second interrogatories asked the jury to determine whether Mr. Briggs and Mr. Anderson, respectively, were at fault for the subject accident. The jury answered affirmatively to both. Then, the third interrogatory instructed the jurors to assign fault to Mr. Briggs, Mr. Anderson, and Admiral. The jury assigned 15% fault to Mr. Briggs, 45% fault to Mr. Anderson, and 40% fault to Admiral. Thus, the jury assigned a percentage of fault to Admiral despite not first finding that Admiral was actually at fault for the accident. Likewise, the trial court then signed the May 8, 2023 judgment which allocated 15% fault to Mr. Briggs, 45% fault to Mr. Anderson, and 40% fault to Admiral even though the jury had not delineated that Admiral was at fault for the accident. Because the jury only affirmatively found that Mr. Briggs and Mr. Anderson were at fault for the accident, "[i]t is evident that the [trial] court's judgment could not and does not adequately comport with the conclusions that the jury reached" because it allocated fault to Admiral without the jury concluding that Admiral was at fault for the accident. *C.D.W. Servs, LLC v. New Bridge Partners, LLC*, 2024-0081, p. 6 (La. App. 4 Cir. 11/12/24), ___ So.3d ___, ___, 2024 WL 5086306, at *3. We vacate the trial court's May 8, 2023 judgment, and we remand this matter for a new trial. *See id.*, 2024-0081, pp. 6-7, ___ So.3d at ___, 2024 WL 5086306, at *3 (vacating and remanding for a new trial after finding the jury's answers to the interrogatories "led to no clear result" as to what the jury intended).

### Whether to Consider the Remaining Assignments of Error

Finally, we must determine whether to consider the remaining assignments of error asserted by the parties. In 2024-CA-0808, the remaining assignments of error asserted by Ports America and Mr. Briggs are numbers two and four. Therein,

Ports America and Mr. Briggs contend the trial court erred in its application of La. C.C.P. art. 966(F) and La. C.C.P. art. 966(D)(1), respectively, in granting Admiral's Motion for Summary Judgment and dismissing Ports America's Third-Party Demands. In 2023-CA-0814, we have not yet addressed five of Mr. Anderson's assignments of error regarding the jury trial.[5]

"It is well settled that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to controversies." *Firestone Polymers, L.L.C. v. La. Dep't of Env't Quality*, 2019-0308, p. 9 (La. App. 1 Cir. 5/28/20), 304 So.3d 1056, 1063 (citing *Joseph v. Ratcliff*, 2010-1342, p. 7 (La. App. 1 Cir. 3/25/11), 63 So.3d 220, 225). When an appellate court "remand[s] for a new trial, without any limitations of issues being specified," then this "is . . . held to vacate completely the judgment of the lower court and open the whole case up for a new trial as to all issues." *Zuelke v. Cambre*, 97 So.2d 442, 443 (La. App. 1st Cir. 1957) (citation omitted).

As we are remanding the matter *sub judice* for a new trial, without any limitation on the issues, we have also vacated completely the trial court's May 8, 2023 judgment and opened the whole case up for a new trial as to all issues. *See Zuelke*, 97 So.2d at 443 (citation omitted). Since we have determined that this matter must be remanded for a new trial, the remaining assignments of error raised in 2023-CA-0814, which pertain to the prior trial, are all irrelevant now. Likewise, because we have already rendered judgment denying Admiral's Motion for

---

[5] The assignments of error from 2023-CA-0814 that we have not yet addressed are Mr. Anderson's first, third, fourth, fifth, and sixth assignments of error: 1) the jury was not properly charged about Louisiana law as to the legal presumptions regarding left-turning vehicles; 3) Mr. Anderson was erroneously denied a *Housley* jury instruction; 4) the corporate representative for Ports America should not have been permitted to give expert testimony; 5) Mr. Briggs should not have been allowed to testify about his personal life; and 6) Mr. Anderson's treating physician should have been allowed to give testimony regarding the reasonable cost of the medical treatment that Mr. Anderson underwent.

Summary Judgment and maintaining Ports America's Third-Party Demands, it is of no utility for us to determine whether the trial court erred in its application of La. C.C.P. art. 966, which are the remaining assignments of error asserted in 2024-CA-0808. Accordingly, we pretermit discussion of assignments of error numbers two and four in 2024-CA-0808 and assignments of error numbers one, three, four, five, and six in 2023-CA-0814.

## DECREE

For the foregoing reasons, we reverse the trial court's March 21, 2023 judgment, which granted Admiral's Motion for Summary Judgment and dismissed Ports America's Third-Party Demands against Admiral with prejudice. We render judgment denying Admiral's Motion for Summary Judgment and maintaining Ports America's Third-Party Demands. Finding that the trial court erred in including Admiral on the jury verdict form and that we are unable to determine how the jury would have allocated fault without Admiral on the form, we vacate the trial court's May 8, 2023 judgment, rendered in accordance with the jury's verdict, and we remand this matter for a new trial.

**JUDGMENT REVERSED AND RENDERED; JUDGMENT VACATED; REMANDED WITH INSTRUCTIONS**